NORMAN D. HUGHEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Hughey v. Commissioner
Docket No. 14230-92
United States Tax Court
T.C. Memo 1994-116; 1994 Tax Ct. Memo LEXIS 117; 67 T.C.M. (CCH) 2440; March 22, 1994, Filed *117 Norman D. Hughey, pro se. For respondent: Dale A. Zusi. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: This matter is before the Court on respondent's motion for summary judgment filed under Rule 121. [1] The issues respondent seeks to have adjudicated are: (1) Whether respondent is precluded from assessing and collecting any of petitioner's alleged tax deficiencies and additions to tax due to the expiration of the 3-year limitations period on assessments and collections provided by section 6501(a), or whether one of the statutory exceptions to the 3-year period applies. If respondent is not precluded from assessing and collecting petitioner's tax deficiencies for any of the years in issue, then, with respect to that year or years, we must further decide whether petitioner is liable for: (2) The underlying tax *118 deficiencies as determined in the deficiency notices, and as subsequently increased in respondent's answer; (3) the additions to tax under section 6653(b) for fraud with the intent to evade tax, as determined in the deficiency notices, and as subsequently increased in respondent's answer; (4) the additions to tax determined under section 6654 for failing to make estimated income tax payments with respect to his 1986, 1987, and 1988 taxable years; and (5) the additions to tax under section 6661 for substantially understating his 1983 through 1988 tax liabilities, as determined in the deficiency notices, and as subsequently increased in respondent's answer. By three separate deficiency notices, all of which were issued March 23, 1992, respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Year
Deficiency
Additions to Tax
Sec.
Sec.
Sec.
Sec.
6653(b)
6653(b)(1) 6653(b)(2) 6661
1981
$  89,100
$ 46,789
-- --
--  1982
2,559
--   $ 1,280
[1]
--  1983
57,234
--   28,609
[1]
$ 13,578
1984
31,845
--   15,923
[1]
7,691
1985
143,832
--   71,916
[1]
35,958
*119 Year
Deficiency
Additions to Tax
Sec.
Sec.
Sec.
Sec.
6653(b)(1)(A) [1]
6653(b)(1)(B) [2]
6654
6661
1986
$ 53,055
$ 39,791
[3]
$ 1,717
$ 12,790
1987
77,627
58,220
[4]
2,779
14,776
Year
Deficiency
Additions to Tax
Sec.
Sec.
Sec.
6653(b)(1) [1]
6654
6661
1988
$ 110,178
$ 82,634
$ 6,245
$ 21,294
*120 Petitioner Norman D. Hughey was residing in San Mateo, California, when the petition was filed. In the petition, dated June 25, 1992, petitioner generally challenges all of the tax deficiencies and additions to tax determined by respondent in the deficiency notices. In addition, petitioner claims that the deficiency notices are invalid with respect to the years 1981 through 1987 because, according to petitioner, the 3-year limitations period on assessments under section 6501(a) had expired before respondent issued the notices. Initially, we observe that the petition does not comply with Rule 34(b)(5). Rule 34(b)(5) requires that the petition contain "Clear and concise lettered statements of the facts on which petitioner bases the assignments of error, except with respect to those assignments of error as to which the burden of proof is on the Commissioner." In general, petitioner has the burden of proof "except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent." Rule 142(a) (emphasis added). In addition, respondent must prove, by clear and convincing evidence, the issue of fraud with *121 intent to evade tax. Sec. 7454(a); Rule 142(b). The petition in this case does not set forth any specific, factual statements to support the assignments of error as to which petitioner bears the burden of proof. Rather, it contains only conclusory statements to the effect that "the Commissioner erred in determining that" there are deficiencies in, and additions to, petitioner's income taxes; such general allegations fail to provide a factual basis for petitioner's claims. On August 27, 1992, respondent filed an answer specifically denying each of petitioner's material allegations, including petitioner's contention that respondent is precluded by the expiration of the 3-year limitations period on assessments from asserting tax deficiencies and additions to tax against petitioner for his 1981 through 1987 taxable years. According to respondent, the statute of limitations under section 6501(a) has no preclusive effect because, for each of the years 1981 through 1987, at least one exception to the 3-year period applies, specifically: Section 6501(c)(1), for filing a fraudulent return; section 6501(c)(3), for failing to file a return; or section 6501(e)(1)(A), for understating *122 gross income on a return by more than 25 percent. [2]
In the answer, respondent also raised three new issues with respect to petitioner's 1982, 1983, and 1985 tax years. For taxable years 1982 and 1985, respondent asserted that petitioner had fraudulently understated his income in amounts greater than what was alleged in the deficiency notices. For taxable year 1983, respondent alleged that petitioner had fraudulently claimed a personal casualty loss, which respondent had failed to disallow in the deficiency notice for that year. Respondent's new allegations were accompanied by increases [3] in petitioner's alleged tax deficiencies and additions to tax for 1982 and 1985, including the additions to tax *123 imposed for fraud. Petitioner's alleged tax deficiencies and additions to tax for 1982, 1983, and 1985, as modified by respondent in the answer, are as follows: Increase/(decrease)
Deficiency
from original Additions to tax
Year
as modified deficiency
as modified Sec.
Sec.
Sec.
6653(b)(1)
6653(b)(2)
6661
1982
$   5,690
$  3,131 $  2,845
[1]
--
1983
56,688
(546)
28,344
[1]
$ 13,833
1985
158,035
14,203 79,018
[1]
39,509
*124 In accordance with Rule 36(b), respondent affirmatively alleged facts in the answer to support the issues as to which she bears the burden of proof -- the exceptions to the 3-year limitations period on assessments; the determination of fraud for each of the years 1981 through 1988; and the three new matters and concomitant increases in petitioner's 1982, 1983, and 1985 tax deficiencies and additions to tax, which were asserted in the answer. Petitioner did not respond to the answer, and on November 2, 1992, respondent moved pursuant to Rule 37(c)[4] for entry of an order deeming petitioner to have admitted certain undenied allegations in respondent's answer -- specifically, paragraphs 6 through 8, and 10 through 15, inclusive. On November 3, 1992, the Court sent petitioner a written notice, informing him of respondent's Rule 37(c) motion and stating that if petitioner filed a reply by November 23, 1992, the Court would deny respondent's motion; however, if petitioner failed to file a reply as directed, the Court would grant respondent's motion and deem petitioner to have admitted that respondent's specified allegations in the answer are true. *125 On November 12, 1992, petitioner's attorney, David M. Kirsch, moved to withdraw as petitioner's counsel on the grounds that, despite Mr. Kirsch's numerous attempts to contact petitioner by phone and by mail, petitioner had completely failed to communicate with him about respondent's Rule 37(c) motion, or his case in general. On December 14, 1992, we granted Mr. Kirsch's motion to withdraw. Petitioner never filed a reply to respondent's Rule 37(c) motion as directed by the Court. Accordingly, we granted respondent's motion and deemed petitioner to have admitted that respondent's specified allegations, set forth in the answer, are true statements. Petitioner's deemed admissions establish the following facts. Petitioner worked as a medical doctor in northern California throughout the years in issue. Petitioner performed medical services for various medical clinics either as an "employee" earning Form W-2 wages, or as an "independent contractor" earning Form 1099 miscellaneous income. On his Federal tax returns, petitioner "fraudulently failed to report substantial amounts of income" received from the clinics and from other sources, and "purposefully schemed to defraud the Federal *126 government of taxes due and owing". During the years in issue, petitioner received income from three clinics in particular: the Sunnyvale Medical Clinic, the Urgent Care Center of America, Inc. (UCCA), and the Readicare Medical Group. However, he failed to report the following amounts of his income from the clinics: Year
Amount
Payor 1981
$  11,833.68
Sunnyvale Medical Clinic
1982
21,811.00
Sunnyvale Medical Clinic
1983
21,451.00
Sunnyvale Medical Clinic
1984
10,849.68
Sunnyvale Medical Clinic
15,627.00
UCCA
10,000.00
Readicare Medical Group
1985
32,772.38
Sunnyvale Medical Group
13,076.00
UCCA
1986
116,513.00
UCCA
5,400.00
Readicare Medical Group
1987
220,664.00
Readicare Medical Group
1988
226,160.00
Readicare Medical Group
Petitioner also provided medical services at a fourth clinic called the Sky Park Medical Group (Sky Park or Sky Park clinic). Sky Park offered patient services at only one location. In accordance with their month-to-month contract, Sky Park provided petitioner with office space and furniture, office supplies, and all the medical equipment necessary for him to serve the patients assigned to him by Sky Park. *127 At the clinic, petitioner saw only Sky Park's patients; he never saw or made appointments with patients of his own. Furthermore, the contract did not require petitioner to travel, to advertise, or to bring in new patients, or to recruit other physicians to work in Sky Park's business. Although Sky Park paid all of the expenses necessary to allow petitioner and other doctors to work at the Sky Park clinic, petitioner deducted numerous items on his 1981 through 1985 tax returns, purportedly as necessary "business expenses" that he had paid in connection with his medical practice at the Sky Park clinic. Petitioner deducted items such as the cost of Sky Park's building maintenance and repairs, depreciation of medical equipment and office furniture, car and truck expenses, car lease payments, legal fees, office supplies, and entertainment expenses. On his tax returns for 1981 through 1985, petitioner claimed the false Sky Park "business deductions" in the amounts as follows: Year
Deduction Claimed
1981
$ 51,100
1982
55,937
1983
59,453
1984
68,141
1985
54,225
At the time petitioner claimed the business deductions on his returns, he knew that he was not entitled to such *128 deductions and that many of the items he deducted were, in fact, personal expenses. During the years in issue, petitioner failed to report the following amounts of interest income which he received on his various investments: Unreported
Year
Interest Income Payor 1981
$  4,550
Edgar G. Engleman
200
Exclusion incorrectly taken
1982
4,550
Edgar G. Engleman
3,237
Merrill Lynch
1983
532
Wedbush Noble Cooke, Inc.
2,227
San Diego Federal
49
Southwest Bank
4,550
Edgar G. Engleman
30,240
Sale of Irving Avenue
1984
4,550
Edgar G. Engleman
19
Southwest Bank
1985
212
National Inter City Bank
1
Dean Witter
171
Sumitomo Bank
439
Commonwealth Central Credit Union
4,550
Edgar G. Engleman
1986
394
National Inter City Bank
546
Securities Settlement Corp.
1988
196
Burlingame Bank and Trust
2,422
Borel Bank and Trust
447
Franklin Bank
TOTAL
64,082
Petitioner "fabricated" the Schedule E attached to his 1981, 1982, 1984, and 1985 tax returns, by claiming false "loss" deductions of $ 22,575, $ 2,080, $ 7,515, and $ 22,131, respectively. Petitioner failed to report dividend income that he received in 1983, *129 1984, 1986, 1987, and 1988, in the respective amounts of $ 1,939, $ 845, $ 599, $ 1,082, and $ 2,938. Petitioner also failed to report capital gain income that he received in 1983, 1984, 1985, and 1988, in the respective amounts of $ 1,544, $ 3,534, $ 5,799, and $ 46,932. On his 1981 tax return, petitioner failed to report $ 61,594 of income that he received from the Sunnyvale Medical Clinic in the form of a lump-sum payment from his pension account. Petitioner knew that he was required to include the $ 61,594 payment in his taxable income for 1981; he was under 59 years old at the time he received the payment, and he never transferred the money into another qualifying tax-deferred retirement account. In 1981, petitioner sold some real estate and reported his proceeds from the sale as a capital gain on his 1981 return. However, petitioner claimed false depreciation deductions on the real estate in the amount of $ 11,958. The depreciated amount should have be "recaptured" and reported as ordinary income on petitioner's 1981 tax return. On his 1983 and 1984 tax returns, petitioner claimed false deductions for property taxes and interest payments on a mortgage. Petitioner never *130 paid the taxes; he paid only part of the interest due on the mortgage; and the property subsequently went into foreclosure. Petitioner knew the taxes and interest were not properly deductible on his returns. On his 1985 tax return, petitioner claimed a false loss deduction of $ 74,778, purportedly due to the foreclosure of some real estate that was designated on the return as the "Skyline property". Petitioner knew the loss was not deductible under section 165(c) because the property was his personal residence. Moreover, after taking into account petitioner's basis in the property, as well as his debt relief income due to the foreclosure, "petitioner failed to report $ 229,559 in taxable income." On his 1985 return, petitioner also claimed a false deduction of $ 2,708, attributing the amount to moving expenses that he had purportedly incurred. Because petitioner's employer reimbursed him for all of his moving expenses, none of the $ 2,708 was properly deductible. Petitioner "intentionally and fraudulently failed to file income tax returns" for 1986, 1987, and 1988. Furthermore, in 1986 and 1987, petitioner filed Forms W-4 on which he falsely claimed to be exempt from any withholding *131 of his income. As a result, petitioner's employers did not withhold any of petitioner's earnings for the payment of his 1986 and 1987 tax liabilities. Petitioner knowingly made false and misleading statements to Internal Revenue Service (IRS) agents. For example, when an IRS auditor questioned petitioner about unreported interest income, petitioner denied that he had received certain interest payments. Petitioner's bank statements and escrow documents, however, show that petitioner did receive the interest income. In paragraphs 6 through 8 of the answer, respondent asserted three new issues which, for various reasons, were either omitted from, or erroneously computed in, the deficiency notices. As a consequence of these "new matters", respondent asserted increases in petitioner's tax deficiencies and additions to tax for 1982, 1983, and 1985, from the amounts that were initially determined in the deficiency notices. Pursuant to Rule 37(c), petitioner is deemed to admit the following facts pertaining to the three new matters and the concomitant increases in his tax liabilities: (1) In his 1982 tax return, petitioner fraudulently failed to report $ 21,811 of income that he received *132 from the Sunnyvale Medical Clinic. Part of the income was paid to compensate petitioner for his services; the balance was paid to petitioner for some appreciated property that he had previously contributed to the clinic. Petitioner is consequently liable for an increased 1982 tax deficiency due to the unreported income. Petitioner's total 1982 deficiency, as increased, is $ 5,690. Moreover, petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) on his entire 1982 tax deficiency, including the portion attributable to the $ 21,811 of unreported income. (2) On his 1983 tax return, petitioner fraudulently deducted a personal casualty loss in the amount of $ 4,242. A personal casualty loss that is not compensated by insurance or otherwise is only deductible to the extent that (1) the loss exceeds $ 100, and (2) the aggregate of all such losses sustained by the taxpayer during the taxable year exceeds 10 percent of the taxpayer's adjusted gross income. Sec. 165(a), (h)(1). For 1983, petitioner did not report any insurance recovery, and 10 percent of his adjusted gross income for the year equals $ 14,292. Although petitioner's claimed casualty loss *133 exceeds $ 100, petitioner was not entitled to deduct it because it did not exceed 10 percent of his adjusted gross income for the year. Petitioner is thus liable for the adjustments to his tax deficiency attributable to the disallowed casualty loss. (3) On his 1985 return, petitioner fraudulently claimed a $ 22,131 deduction on Schedule E. On the deficiency notice, the $ 22,131 was inadvertently subtracted from, rather than added to, petitioner's taxable income, resulting in a figure that was inaccurate. Petitioner is liable for an increased tax deficiency attributable to the disallowance of the $ 22,131 deduction that was not taken into account in the deficiency notice. Petitioner is also liable for increased additions to tax under section 6653(b)(1) and (2), and under section 6661, on the entire deficiency, as increased. Finally, petitioner is deemed to admit the following ultimate facts as stated in paragraphs 10Y and 10Z of the answer: Y. The petitioner fraudulently, and with intent to evade taxes, omitted from his income tax returns for the taxable years 1981, 1982, 1983, 1984, 1985, 1986, 1987 and 1988, income in the amounts of $ 162,167.37, $ 87,715.00, $ 159,881.00, *134 $ 137,957.00, $ 457,025.00, $ 130,819.00, $ 217,306.00 and $ 314,655.00, respectively. Z. The petitioner fraudulently understated his income tax liabilities for the taxable years 1981, 1982, 1983, 1984, 1985, 1986, 1987 and 1988 in the amounts of $ 89,100.00, $ 5,690.00, $ 56,688.00, $ 31,845.00, $ 158,035.00, $ 53,055.00, $ 77,627.00 and $ 110,178.00, respectively.
On May 18, 1993, respondent filed a motion for summary judgment based solely on the affirmative allegations in the answer, the truth of which we deem petitioner to have admitted, pursuant to Rule 37(c). [5] Respondent argues that petitioner's admissions are sufficient to sustain her underlying deficiency determinations, and to satisfy her burden of affirmatively proving: The application of at least one of the exceptions to the 3-year limitations period on assessments; petitioner's liability for all of the additions to tax imposed for fraud; and petitioner's liability for the increases in the amounts of his alleged tax deficiencies and additions to tax. Petitioner never filed an objection to respondent's summary judgment motion. *135 Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). A decision on the merits of a taxpayer's claim can be made via summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd.    F.3d     (7th Cir., Feb. 22, 1994). Because the granting of a summary judgment motion is a decision adverse to one party without a trial, we consider such an action to be a remedy that is cautiously invoked and used sparingly after carefully ascertaining that the moving party has met all the requirements for the granting of a summary judgment motion. Associated Press v. United States, 326 U.S. 1, 6 (1945); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). *136 The moving party bears the burden of proving there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Marshall v. Commissioner, 85 T.C. 267, 271 (1985); Espinoza v. Commissioner, supra. However, when a motion for summary judgment is properly made, "an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, * * * must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party." Rule 121(d) (emphasis added). For the reasons set forth below, we find that there is no genuine issue of material fact remaining for trial, and that respondent is entitled to a decision in her favor with respect to each issue in this case as a matter of law. In his petition, petitioner properly raised the affirmative defense that the 3-year limitations period, under section 6501(a), had expired with respect to his 1981 through 1987 tax years. Rule 39. In particular, *137 petitioner alleged that he had timely filed an income tax return for each of the years in issue, and that his returns for 1981 through 1987 were filed more than 3 years before the deficiency notices were mailed on March 23, 1992. In general, section 6501(a) requires respondent to assess an income tax deficiency within 3 years from the later of: (1) The date the tax return was filed, or (2) the due date of the tax return. However, if a deficiency notice is issued within the 3-year limitations period and the taxpayer files a timely petition with the Court for review of the deficiency, the running of the limitations period is suspended until this Court's decision in the case becomes final. If the taxpayer shows that the deficiency notice was mailed more than 3 years after the later of the filing or the due date of the return, then respondent bears the burden of proving the existence of an exception to the general limitations period. Stratton v. Commissioner, 54 T.C. 255, 289, modified 54 T.C. 1351 (1970). In this case, petitioner is deemed to admit (despite his claims to the contrary in the petition) that he failed to file *138 tax returns for each of the years 1986 and 1987. In light of these deemed admissions, we agree with respondent that the limitations period, for taxable years 1986 and 1987, remains open indefinitely under section 6501(c)(3), which provides an exception when no tax return is filed. Moreover, as discussed below, we find that respondent has also carried her burden of proving that the fraud exception to the 3-year limitations period, set forth in section 6501(c)(1), applies with respect to taxable years 1981 through 1987, thereby extending the limitations period for those years indefinitely. Accordingly, we hold that respondent is not precluded by the expiration of the 3-year limitations period under section 6501(a) from assessing and collecting any of petitioner's tax deficiencies and additions to tax for any of the years in issue. In light of our holding, we need not reach respondent's alternative "substantial omission" argument, under section 6501(e)(1)(A), to petitioner's statute of limitations defense. The next issue for our decision is whether petitioner is liable for the underlying tax deficiencies in the amounts stated in the deficiency notices, and for the subsequent increases *139 in his 1982, 1983, and 1985 tax deficiencies resulting from the three "new matters" that respondent asserted in her answer. With respect to the amounts of petitioner's tax deficiencies reflected in the deficiency notices, there is no question that respondent should prevail, either on the ground that petitioner has failed to carry his burden of proving that respondent's determinations are erroneous, or has defaulted by virtue of his failure to file an objection to respondent's summary judgment motion. Rule 142(a); Gilday v. Commissioner, 62 T.C. 260 (1974); Roldan v. Commissioner, T.C. Memo. 1980-73. However, respondent bears the burden of proving, by a preponderance of the evidence, petitioner's liability for any "new matter" asserted in the answer which "alters the amount of the original deficiency, requires the presentation of different evidence, or is inconsistent with his [respondent's] original determination." Estate of Emerson v. Commissioner, 67 T.C. 612, 620 (1977); Sanderling, Inc. v. Commissioner, 66 T.C. 743, 757 (1976), affd. 571 F.2d 174 (3d Cir. 1978); *140 Rule 142(a). With respect to the three matters and consequential increases in petitioner's alleged deficiencies that were asserted for the first time in respondent's answer, petitioner is deemed to have admitted that he: (1) Fraudulently failed to report $ 21,811 of income in 1982 from the Sunnyvale Medical Clinic, (2) fraudulently deducted a personal casualty loss of $ 4,242 in 1983, and (3) fraudulently claimed a $ 22,131 deduction on Schedule E of his 1985 return. Petitioner's deemed admissions as to these basic facts, as well as others, are sufficient to establish petitioner's liability for the adjustments in his 1982, 1983, and 1985 tax deficiencies. In light of the foregoing, we find that there is no genuine issue of material fact regarding petitioner's underpayments of his 1981 through 1988 income taxes. Accordingly, we hold that petitioner is liable for the underlying tax deficiencies in the amounts reflected in the deficiency notices, and for the deficiency increases asserted in the answer, as altered by respondent's concessions. The next issue before us is whether we should sustain respondent's determinations of the additions to petitioner's income taxes due to fraud. *141 Respondent bears the burden of proving petitioner's fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). To carry that burden, respondent must clearly show that petitioner intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Petitioner's intent, however, may be inferred from circumstantial evidence. Powell v. Granquist, 252 F.2d 56, 61 (9th Cir. 1958); Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). In Bradford v. Commissioner, 796 F.2d 303 (1986), affg. T.C. Memo. 1984-601, the U.S. Court of Appeals for the Ninth Circuit (to which an appeal in this case would lie), articulated a nonexclusive list of factors that demonstrate fraudulent intent. These "badges of fraud" include: (1) Understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) concealing *142 assets, (5) failing to cooperate with tax authorities, (6) attempting to conceal illegal activities, (7) failing to make estimated tax payments, and (8) filing false documents such as the Forms W-4. Id. at 307-308; Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984); see also Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). A mere understatement of income, by itself, does not establish fraud. However, a consistent pattern of understating income over a number of years is strong evidence of a fraudulent intent to evade the income tax. Estate of Mazzoni v. Commissioner, 451 F.2d 197, 202 (3d Cir. 1971), affg. T.C. Memo. 1970-144 and 1970-37; Otsuki v. Commissioner, 53 T.C. 96, 108 (1969). For each year, respondent must prove fraud with affirmative evidence; fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). In this respect, respondent may not simply rely on petitioner's *143 failure to meet his burden of proving error in respondent's determinations as to the underlying deficiencies. E.g., Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982), and cases cited therein. However, it is well settled that fraud may be established through facts deemed admitted under Rule 37(c) or Rule 90. Cassidy v. Commissioner, 814 F.2d 477, 481-482 (7th Cir. 1987), affg. T.C. Memo. 1986-133; Doncaster v. Commissioner, 77 T.C. 334, 338 (1981) (In applying sec. 6653(b) for the taxpayer's 1976 tax year, we stated that "Nothing * * * dictates that we should require respondent to present affirmative evidence of fraud, independent of the deemed admissions." (Fn. ref. omitted.)); Marshall v. Commissioner, 85 T.C. at 272. Where fraud is determined for each of several years, respondent's burden applies separately for each year. Drieborg v. Commissioner, 225 F.2d 216, 219-220 (6th Cir. 1955), affg. in part and revg. *144 in part a Memorandum Opinion of this Court. Furthermore, the proof required for respondent to sustain a determination of an addition to tax for fraud may vary depending on which fraud provision respondent is asserting. With respect to section 6653(b) for petitioner's taxable year 1981, [6] and section 6653(b)(1) for petitioner's taxable years 1982 through 1985, [7] *146 respondent need only prove that some part of each underpayment of tax is due to fraud. With respect to section 6653(b)(1)(A) and (B), applicable to petitioner's taxable years 1986 and 1987, [8] *147 and section 6653(b)(1), applicable to petitioner's taxable year 1988, [9] if respondent establishes that some part of petitioner's underpayment of tax was due to fraud, the entire underpayment is treated as attributable to fraud unless petitioner proves otherwise. Sec. 6653(b)(2) (as amended and in effect for taxable years 1986, 1987, and 1988). However, with respect to section 6653(b)(2), applicable to petitioner's taxable years 1982 through 1985, [10] respondent must prove the amount of the underpayment that is attributable to petitioner's fraud in order for the addition to tax to attach to that portion. Sec. 6653(b)(2); *145 Cooney v. Commissioner, T.C. Memo. 1994-50; Franklin v. Commissioner, T.C. Memo. 1993-184. Petitioner's deemed admissions contain numerous indicia of his fraud and intent to evade taxation with respect to each of his taxable years in issue. He admits, for example, that he knowingly failed to report substantial amounts of the income he received each year from the medical clinics, from dividends and interest, and from the sales of his property. He also admits that he: used funds claimed as business expenses for his personal *148 benefit, claimed many other false deductions, filed false documents including his Forms W-4, lied to IRS agents, and intentionally failed to file his tax returns for 1986, 1987, and 1988. Indeed, petitioner's admitted actions exemplify most of the "badges of fraud" discussed by the Ninth Circuit Court of Appeals in Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986). Clearly, petitioner's admissions provide ample evidence of petitioner's liability for those additions to tax for fraud in which respondent need only prove that some part of the year's underpayment was due to petitioner's fraud. In this case, however, we are also convinced that petitioner's admissions are sufficient to meet respondent's augmented burden of proving petitioner's liability under section 6653(b)(2), imposed for petitioner's 1982 through 1985 taxable years, which requires respondent to prove the amount of the underpayment attributable to petitioner's fraud. We observe that, in paragraphs 10Y and 10Z of the answer, petitioner is deemed to admit the following: Y. The petitioner fraudulently, and with intent to evade taxes, omitted from his income tax *149 returns for the taxable years 1981, 1982, 1983, 1984, 1985, 1986, 1987, and 1988, income in the amounts of $ 162,167.37; $ 87,715.00; $ 159,881.00; $ 137,957.00, $ 457,025.00; $ 130,819.00; $ 217,306.00 and $ 314,655.00, respectively. Z. The petitioner fraudulently understated his income tax liabilities for the taxable years 1981, 1982, 1983, 1984, 1985, 1986, 1987, and 1988 in the amounts of $ 89,100.00, $ 5,690.00, $ 56,688.00, $ 31,845.00, $ 158,035.00, $ 53,055.00, $ 77,627.00 and $ 110,178.00, respectively.
Taken together, these two admissions establish the amounts of taxable income petitioner intentionally and fraudulently omitted from his returns, which directly correlate to the amounts of petitioner's resulting underpayments of tax. Sec. 6653(b)(2). Petitioner's other admissions are also important in that they provide a factual basis for the ultimate facts petitioner is deemed to admit in paragraphs 10Y and 10Z. As we stated in Doncaster v. Commissioner, 77 T.C. at 337-338: we emphasize that the deemed admissions of the allegations of paragraphs 7(a) through 7(g) are also of importance in respect of respondent's ability *150 to establish his fraud case; he has the burden of proving the facts necessary to show an underpayment (to which the addition to tax for fraud attaches) and may not rely upon petitioner's failure to produce evidence in order to carry his (respondent's) burden in that respect. [Citations omitted; emphasis added.]
In light of the foregoing, we hold that there is no genuine issue of material fact with respect to respondent's determinations of the additions to tax imposed for fraud; such additions are to be computed on the full amounts of petitioner's tax deficiencies (as increased by the answer) for each of his taxable years 1981 through 1988. The next question to be decided is whether petitioner is liable under section 6654 for the additions to his 1986, 1987, and 1988 taxes, due to his failure to make estimated income tax payments for those years. Petitioner bears the burden of proof with respect to these determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Furthermore, section 6654 is mandatory unless the taxpayer places himself within one of the computational exceptions provided for in subsection (e) thereof. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). *151 Petitioner's admissions establish that he failed to file any tax returns for 1986, 1987, and 1988. Petitioner has also failed to show that he falls within one of the exceptions, under section 6654(e), to the imposition of the addition to tax. Thus, we find that there is no genuine issue of material fact with respect to respondent's determinations under section 6654, and accordingly, we sustain them as a matter of law. The remaining issue before us is whether petitioner is liable under section 6661 for the additions to his 1983 through 1988 income taxes, as determined in the deficiency notices, and as subsequently increased in the answer with respect to the years 1983 and 1985. Section 6661 provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). A understatement of tax in any year is "substantial" if the tax understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(2). Petitioner has the burden of proving that respondent's initial determinations under *152 section 6661 are in error, while respondent has the burden of proving petitioner's liability for the increased amounts under section 6661 which she asserted after the deficiency notices were issued. Rule 142(a). Petitioner's deemed admissions establish the exact amounts of his tax understatements for each of the years 1983 through 1988, as increased by the answer, and further, that such understatements were "substantial" within the meaning of section 6661(b)(2). In light of these admissions, we find there is no genuine issue with respect to respondent's assertions under section 6661. Accordingly, we sustain all of the additions to tax determined by respondent under section 6661, including respondent's subsequent adjustments to those amounts as stated in the admitted paragraphs of the answer. To reflect the foregoing, An appropriate order will be issued and decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the years in issue.↩
1. Fifty percent of the interest due on the portion of the underpayment attributable to fraud. For each of the years 1982 through 1985, respondent determined that the entire underpayment was due to fraud.↩
1. Sec. 6653(b)(1)(A) provides for an addition to tax equal to 75 percent of the portion of the underpayment attributable to fraud. With respect to subpar. A, respondent determined that the entire underpayment for each of the years 1986 and 1987 was due to fraud. We note that these determinations are inconsistent with respondent's determinations for the same years under subpar. B of sec. 6653(b)(1)↩.
2. Sec. 6653(b)(1)(B)↩ provides for an addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to fraud. With respect to subpar. B, respondent determined that less than the entire underpayment for each of the years 1986 and 1987 was due to fraud.
3. Fifty percent of the interest due on $ 51,161.↩
4. Fifty percent of the interest due on $ 59,104.↩
1. Sec. 6653(b)(1)↩ provides for an addition to tax equal to 75 percent of the portion of the underpayment attributable to fraud. For 1988, respondent determined that the entire underpayment was attributable to fraud.
2. In light of respondent's arguments, we assume that she concedes that the deficiency notices were issued more than 3 years after the dates petitioner's tax returns were deemed filed, except with respect to petitioner's 1986, 1987, and 1988 tax years, for which respondent claims petitioner never filed any returns.↩
3. With respect to petitioner's 1983 tax year, respondent also conceded several items which, although not directly relevant to the issues before us, resulted in decreases in petitioner's total 1983 tax deficiency and additions to tax under sec. 6653(b)(1) and (2), after taking into account the increases resulting from respondent's disallowance of petitioner's casualty loss deduction. Although petitioner's 1983 tax deficiency was decreased in the answer, respondent increased the amount due under sec. 6661 for a substantial understatement. Respondent attributes the increase to her failure, in the deficiency notice, to apply sec. 6661↩ to the portion of the deficiency attributable to petitioner's self-employment tax.
1. Fifty percent of the interest due on the entire deficiency, as modified by the answer.↩
4. Rule 37(c) provides in pertinent part as follows: (c) Effect of Reply or Failure Thereof: * * * Where a reply is not filed, the affirmative allegations in the answer will be deemed denied unless the Commissioner, within 45 days after expiration of the time for filing the reply, files a motion that specified allegations in the answer be deemed admitted. That motion will be served on the petitioner and may be granted unless the required reply is filed within the time directed by the Court.↩
5. We note that respondent served her summary judgment motion on petitioner at his last known address. Several days later, by certified mail, the Court issued an order directing petitioner to file a response to respondent's motion. We assume that petitioner received the Court's order since it was never returned to the Court by the U.S. Postal Service.↩
6. As applicable to petitioner's taxable year 1981, sec. 6653(b)↩ provides: "If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment."
7. Sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 616-617, amended sec. 6653(b) effective for taxes the last day prescribed by law for the payment of which, without regard to extensions, was after Sept. 3, 1982. Following its amendment, sec. 6653(b) provides in relevant part: (1) In general. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. (2) Additional amount for portion attributable to fraud. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).↩
8. Sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2742-2743, amended sec. 6653(b) effective for returns the due date of which, determined without regard to extensions, was after Dec. 31, 1986. Following its amendment, sec. 6653(b) provides in relevant part: (1) In general. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to the sum of -- (A) 75 percent of the portion of the underpayment which is attributable to fraud, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to such portion for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax or, if earlier, the date of the payment of the tax.
(2) Determination of portion attributable to fraud. -- If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes is not attributable to fraud.↩
9. Sec. 1015(b)(2)(B) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3569, amended sec. 6653(b)(1) effective for returns the due date for which, determined without regard to extensions, is after Dec. 31, 1988. (Sec. 6653(b)(2) remained the same as under the Tax Reform Act of 1986.) Following its amendment, sec. 6653(b)(1) provides in relevant part: (1) In general. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.↩
10. See supra↩ note 8.