*Decision will be entered for the respondent.*

SPURGEON MARSHALL AND ESTATE OF THELMA MARSHALL, DECEASED, SPURGEON MARSHALL, COMMUNITY SURVIVOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6302–79.     Filed August 13, 1985.

*Ward A. Busey*, for the petitioners.
*Thomas G. Norman*, for the respondent.

OPINION

NIMS, *Judge*: This matter is before the Court on respondent's motion for summary judgment pursuant to Rule 121.[1]

Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows:

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 in effect for the years in question.

| Year | Deficiency | Additions to tax sec. 6653(b) |
|------|------------|-------------------------------|
| 1974 | $14,801.01 | $7,400.51 |
| 1975 | 9,314.21 | 4,657.10 |

Respondent's motion for summary judgment raises the following issues: (1) Whether petitioners underreported income from the operation of a Gulf service station during the years in issue; and (2) whether petitioners are liable for additions to tax for fraud under section 6653(b).

This matter has been before the Court on four occasions: on February 2, 1983, at which time the Court was advised by respondent's counsel, speaking for both parties, that the case was "close to settlement"—the trial was therefore continued generally; on February 28, 1984, at which time petitioners' counsel (making his only physical appearance in this case) advised the Court that he, petitioners' counsel, was unable to locate his client but would keep trying—the case was again continued generally; on May 2, 1984, at which time the Court was advised that respondent's counsel was unable to make contact with petitioners' counsel—the case was again continued; and on October 22, 1984, at which time respondent argued this motion for summary judgment which had been filed with the Court on June 22, 1984, and served on petitioners on June 26, 1984, along with notice setting respondent's motion for hearing in Houston, Texas, on October 22, 1984. No appearance by or on behalf of petitioners was made, and respondent again advised the Court that he was unable to make contact with petitioners' counsel. The Court received no communication from petitioners' counsel or petitioners in response to the notice of hearing. Likewise, petitioners did not respond in writing to respondent's motion for summary judgment.

On May 14, 1979, petitioners Spurgeon Marshall and Thelma Marshall, husband and wife, filed a petition disputing the income tax deficiencies and additions to tax for fraud set forth in the notice of deficiency.[2] On July 12, 1979, respondent timely filed an answer denying petitioners' assignment of errors and affirmatively alleging that part of petitioners' underpayment of tax for 1974 and 1975 was due to fraud.

---

[2]On Aug. 2, 1980, subsequent to the filing of the petition herein, Thelma Marshall died. On Feb. 2, 1983, we granted respondent's motion to substitute the Estate of Thelma Marshall, deceased, Spurgeon Marshall, Community Survivor, for Thelma Marshall.

Petitioners did not file a reply denying the affirmative allegations of fraud in respondent's answer.

On May 11, 1983, and March 30, 1984, respondent served requests for admissions on petitioners' counsel. The admissions requested were the following:

1. During each of the taxable years 1974 and 1975, petitioners operated Marshall Gulf Service, a retail establishment located at 1401 Lockwood, Houston, Texas 77020.

2. During the taxable years 1974 and 1975, petitioners operated Marshall's Tire Service, a retail establishment located at 1401 Lockwood, Houston, Texas 77020.

3. During the years 1974 and 1975, the principal source of income of Marshall Gulf Service was from the sale of gasoline.

4. During the years 1974 and 1975, the petitioners reported their income on the basis of the cash method of accounting.

5. During the years 1974 and 1975, the petitioners purchased the gasoline sold by Marshall Gulf Service from the Gulf Oil Corporation.

6. During the years 1974 and 1975, the petitioners maintained daily sales records on which they recorded an amount stated to be the dollar amount of daily sales for Marshall Gulf Service.

7. The daily sales records maintained by the petitioners for Marshall Gulf Service for the years 1974 and 1975 omitted substantial amounts of receipts.

8. During the years 1974 and 1975, the petitioners used documents captioned "Paid Out Slip" on which were recorded amounts stated to have been paid to Gulf Oil Corporation (Gulf) for the gasoline delivered to Marshall Gulf Service.

9. The paid out slips filled out by the petitioners for Marshall Gulf Service for the years 1974 and 1975 understated the amounts paid to Gulf Oil Corporation for gasoline.

10. The daily sales records and the paid out slips were given to the bookkeeper for Marshall Gulf Service for the preparation of monthly profit and loss statements. These amounts were subsequently used for the preparation of the petitioners' tax returns for the years 1974 and 1975.

11. On their income tax returns for the years 1974 and 1975, the petitioners reported gross receipts as follows: 1974 – $340,944.48 and 1975 – $504,703.60.

12. On their income tax returns for the years 1974 and 1975, the petitioners reported costs of goods sold for Marshall Gulf Service as follows: 1974 – $320,176.76 and 1975 – $481,600.38.

13. On their income tax returns for the years 1974 and 1975, the petitioners reported purchases for Marshall Gulf Service as follows: 1974 – $317,418.56 and 1975 – $481,404.26.

14. During the years 1974 and 1975, the Gulf Oil Corporation delivered totals of 1,663,649 and 1,488,394 gallons of gasoline, respectively, to petitioners' place of business.

15. The actual purchases of the gasoline delivered to petitioners' place of business during the years 1974 and 1975 were in the following dollar amounts: 1974 – $668,222.57 and 1975 – $686,353.80.

16. During the years 1974 and 1975, petitioners sold gasoline at an average price of not less than $.04 per gallon more than their cost.

17. During the years 1974 and 1975, the gross receipts from petitioners' Marshall Gulf Service were: 1974 – $737,476.73 and 1975 – $746,085.86.

18. On their federal income tax returns (Forms 1040) for each of the years 1974 and 1975, the petitioners understated their gross receipts from Marshall Gulf Service by at least $396,532.25 for 1974 and by at least $241,382.36 for 1975.

19. On their federal income tax returns (Forms 1040) for each of the years 1974 and 1975, the petitioners understated their cost of goods sold.

20. Petitioners knowingly understated their gross receipts for the years 1974 and 1975.

21. Petitioners knowingly understated their cost of goods sold for the years 1974 and 1975.

22. Petitioners knowingly maintained false records of receipts for the years 1974 and 1975.

23. Petitioners knowingly maintained false records of purchases for the years 1974 and 1975.

24. Petitioners knowingly had their income tax return for the year 1974 prepared from false records maintained by petitioners.

25. Petitioners knowingly had their income tax return for the year 1975 prepared from false records maintained by petitioners.

26. During the years 1974 and 1975, petitioners made payments for personal items out of the cash receipts of Marshall Gulf Service without first reporting the cash so expended as part of the gross receipts of Marshall Gulf Service.

27. The petitioners' fraudulently and with intent to evade tax, omitted from their income tax returns for the taxable years 1974 and 1975, gross receipts of $396,478.25 and $241,382.06, respectively.

28. The petitioners' fraudulently, and with intent to evade tax, understated their purchases on their income tax returns for the years 1974 and 1975 in the amount of $350,754.01 and $204,947.54, respectively.

29. Petitioners fraudulently, and with intent to evade tax, omitted from their income tax returns for the years 1974 and 1975 taxable income in the amounts of $37,724.24 and $27,832.54, respectively.

30. A part of the underpayment of tax required to be shown on petitioners' income tax returns for the taxable years 1974 and 1975 is due to fraud.

Petitioners failed to respond to either set of requests for admissions.

Respondent's motion for summary judgment requests that we sustain the deficiencies and additions to tax for fraud set forth in the notice of deficiency. In his motion, respondent contends that because petitioners failed to respond to the request for admissions served on March 30, 1984, the allega-

tions contained therein are deemed admitted under Rule 90(c).[3] Respondent concludes that the facts deemed admitted under Rule 90(c) are sufficient to sustain his deficiency determination as well as satisfy his burden of affirmatively proving fraud.

For reasons set forth below, we grant respondent's motion for summary judgment.

Under Rule 121, a summary adjudication may be made "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). The party opposing the motion cannot rest upon the allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The moving party, however, bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982).

The first issue for decision is whether we should grant respondent's motion for summary judgment as to the income tax deficiencies for 1974 and 1975.

Respondent's motion for summary judgment as to the income tax deficiencies for the years in issue is supported by

---

[3]Rule 90 provides in pertinent part as follows:

RULE 90. REQUESTS FOR ADMISSION

(a) Scope and Time of Request: A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters which are not privileged and are relevant to the subject matter involved in the pending action, provided such matters are set forth in the request and relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. * * *

\* \* \* \* \* \* \*

(c) Response to Request: Each matter is deemed admitted unless, within 30 days after service of the request or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the requesting party (i) a written answer specifically admitting or denying the matter involved in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (ii) an objection, stating in detail the reasons therefor. * * *

\* \* \* \* \* \* \*

(e) Effect of Admission: Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission. * * *

his unanswered requests for admissions. Because petitioners failed to respond to respondent's requests for admissions, the facts contained therein are deemed admitted. Rule 90(c); *Freedson v. Commissioner*, 65 T.C. 333, 334–336 (1975). Based on these deemed admissions, we find that respondent has satisfied his burden of proving that no genuine issue of material fact exists as to respondent's deficiency determinations and that respondent is entitled to a decision with respect to his deficiency determinations as a matter of law. Consequently, we grant respondent's motion as to the amount of deficiencies determined in the notice of deficiency.

The next issue for decision is whether we should grant respondent's motion for summary judgment as to the additions to tax for fraud under section 6653(b).

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. *Professional Services v. Commissioner*, 79 T.C. 888, 930 (1982). The burden of proof rests on respondent to show by clear and convincing evidence that some portion of the understatement of income for each year was due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b).

Respondent, relying on *Doncaster v. Commissioner*, 77 T.C. 334 (1981) (a Court-reviewed opinion), argues that the facts deemed admitted under Rule 90(c) are sufficient to satisfy his burden of proving that some portion of petitioners' understatement of income for each year was due to fraud. We agree.

In *Doncaster*, this Court found that facts deemed admitted under Rule 37(c), were sufficient to satisfy respondent's burden of affirmatively proving fraud. In that case, the petitioner was deemed to have admitted under Rule 37(c) that:

(h) [He] fraudulently, and with intent to evade tax, omitted taxable income of $22,195.00 from his 1976 federal income tax return.

(i) A part of the underpayment of tax required to be shown on the petitioner's 1976 federal income tax return is due to fraud with intent to evade tax.

In granting respondent's motion for summary judgment as to additions to tax for fraud based on the deemed admissions, the Court pointed to the other allegations in paragraph 7(a) through (g) and stated that "Nothing * * * dictates that we should require respondent to present affirmative evidence of

fraud, independent of the deemed admissions [fn. ref. omitted]." *Doncaster v. Commissioner, supra* at 338. To reach this conclusion we stated emphatically:

So that there will be no misunderstanding, we emphasize that the deemed admissions of the allegations of paragraphs 7(a) through 7(g) are also of importance in respect of respondent's ability to establish his fraud case; he has the burden of proving the facts necessary to show an underpayment (to which the addition to tax for fraud attaches) and may not rely upon petitioner's failure to produce evidence in order to carry his (respondent's) burden in that respect. [77 T. C. at 337–338. Citations omitted.]

In the instant case, petitioners are deemed to have admitted facts which overwhelmingly establish substantial, intentional omissions of taxable income for 1974 and 1975, the taxable years in question. In addition, petitioners are deemed to have admitted the following:

Petitioners fraudulently, and with intent to evade tax, omitted from their income tax returns for the years 1974 and 1975 taxable income in the amounts of $37,724.24 and $27,832.54, respectively.

A part of the underpayment of tax required to be shown on petitioners' income tax returns for the taxable years 1974 and 1975 is due to fraud.

These admissions are almost identical to the admissions relied on in *Doncaster v. Commissioner, supra*, to sustain respondent's additions to tax for fraud. Although the admissions in the instant case were deemed admitted under Rule 90(c), rather than Rule 37(c), we believe that our reasoning in *Doncaster* is also applicable here. We therefore find that the facts deemed admitted under Rule 90(c) are sufficient to satisfy respondent's burden of proving that some portion of the understatement of income for each year was due to fraud with intent to evade tax.

Accordingly, respondent's motion for summary judgment is granted as to the deficiencies and additions to tax for fraud set forth in the notice of deficiency.

*An appropriate order and decision will be entered.*