PATRIC DUVERSEAU, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duverseau v. Commissioner
Docket No. 13895-92
United States Tax Court
T.C. Memo 1993-569; 1993 Tax Ct. Memo LEXIS 580; 66 T.C.M. (CCH) 1467; December 2, 1993, Filed *580 Decision will be entered for respondent. For respondent: Patricia Anne Golembiewski. CHIECHI
CHIECHI
MEMORANDUM OPINION CHIECHI, Judge: This case is before the Court on respondent's motion to dismiss for lack of prosecution under Rules 123(b) and 149(a), [1] which we shall treat as a motion for summary judgment under Rule 121 insofar as it relates to the addition to tax for fraud determined by respondent. Respondent determined the following deficiency in, and additions to, petitioner's Federal income tax for 1988: Additions to Tax
Deficiency
Section 6653(b)(1)
Section 6661
$ 31,673
$ 23,755
$ 7,918
Petitioner resided in Sunnyvale, California, at the time he filed the petition. In her motion to dismiss, respondent represents, and petitioner does not dispute, the following facts. On May 25, 1993, respondent sent a letter to petitioner *581 asking him for information about how he intended to proceed in this case. Petitioner did not reply in any manner to this letter. On June 14, 1993, respondent served on petitioner respondent's request for admissions which was accompanied by a letter dated June 14, 1993. Petitioner did not reply in any manner to respondent's request for admissions or to that letter. Since petitioner failed to reply in any manner to respondent's request for admissions, each matter set forth in that request, including the following, is deemed admitted. Rule 90(c); Marshall v. Commissioner, 85 T.C. 267, 272 (1985); Morrison v. Commissioner, 81 T.C. 644, 647 (1983). During 1988, petitioner had two businesses for which he filed Schedules C with his 1988 Federal income tax return. One business known as The Golden Nugget was involved in buying and selling gold and silver bullion, coins, and scrap metal. The second business known as Patric Duverseau and also known as P&D Check Cashing (P&D) was involved in cashing checks for a commission of 1.23 percent of the check. P&D had no insurance during 1988 to provide protection in the event that *582 it cashed bad checks. According to the books and records of P&D, petitioner provided a check cashing service to an individual identified as Gaston Civil. Petitioner was unable to provide any information to the Internal Revenue Service (the Service) about Gaston Civil during the examination of petitioner's 1988 income tax return, such as his address, his social security number, his telephone number, or even a physical description. During 1988, P&D cashed 18 checks for Gaston Civil totaling $ 106,076.81 and earned $ 1,042.58 in commissions for cashing those checks. Thirteen of those 18 checks were issued to him by an entity known as Gold Coast Gold and Silver (GCGS). The checks written by GCGS and made payable to Gaston Civil actually represented purchases by GCGS of gold bullion and other metals from petitioner through his business known as The Golden Nugget. During 1988, petitioner sold gold and other metals to GCGS as follows: Date
Amount of Sale
Date of Check
Amount of Check
March 3
$ 21,970.50
March 3
$ 9,609.80
March 4
9,620.00
March 10
2,740.70
May 13
3,683.20
May 14
3,400.00
Cash
283.20
May 27
24,923.59
May 27
6,723.59
May 27
8,950.00
May 27
9,250.00
June 13
4,023.60
June 13
4,023.60
June 27
12,443.87
June 27
6,042.00
June 27
4,958.00
July 6
1,443.87
August 2
18,498.00
August 2
9,000.00
August 2
8,000.00
Cash
698.00
*583 Two of the 18 checks presented by Gaston Civil to P&D in 1988 were issued to him by an entity known as Milpitas Gold and Silver (MGS). The checks written by MGS and made payable to Gaston Civil actually represented the purchases made by MGS of gold bullion and other metals from petitioner through his business known as The Golden Nugget. During 1988, petitioner sold gold and other metals to MGS as follows: Date
Amount of Sale
Date of Check
Amount of Check
March 28
$ 2,221.80
March 28
$ 2,221.80
April 20
3,347.45
April 20
3,347.45
Three of the 18 checks presented by Gaston Civil to P&D in 1988 were issued to him by unknown individuals or entities and actually represented the purchases by them of gold bullion and other metals from petitioner through his business known as The Golden Nugget. During 1988, petitioner sold gold and other metals to the unidentified individuals as follows: Date
Amount of Sale
Date of Check
Amount of Check
October 24
$ 9,411
October 24
$ 9,411
November 10
6,000
November 10
6,000
November 25
535
November 25
535
During 1988, petitioner cashed checks for Gaston Civil on the following dates for the following amounts *584 and received the following commissions: Date Amount of Check
Amount of Commission
March 4
$ 9,609.80
$ 96.80
March 5
9,620.00
96.00
March 12
2,740.70
27.70
March 28
2,221.80
0.00
April 20
3,347.45
33.45
May 14
3,400.00
34.00
May 27
9,250.00
92.47
May 28
8,950.00
90.00
May 31
6,723.59
67.59
June 13
4,023.60
40.60
June 28
6,042.00
60.42
June 29
4,958.00
50.00
July 8
1,443.87
14.87
August 2
9,000.00
90.00
August 4
8,800.00
88.00
October 24
9,411.00
94.00
November 10
6,000.00
60.00
November 25
535.00
6.68
TOTAL
$ 106,076.81
$ 1,042.58
Petitioner did not report on the 1988 Schedule C for The Golden Nugget any of his transactions with GCGS, MGS, or others. Petitioner included as income on the 1988 Schedule C for P&D the commission of $ 1,042.58 purportedly earned for cashing the checks for Gaston Civil. When petitioner sold gold bullion and other metals to GCGS, MGS, or others, he requested that the checks be made payable to Gaston Civil, rather than to himself or The Golden Nugget. None of the checks written by GCGS, MGS, or others to Gaston Civil during 1988 represented payment for the sale of gold or other metals by Mr. Civil. *585 All checks written by GCGS, MGS, or others to Gaston Civil in 1988 and cashed by P&D represented payment for the sale of gold or other metals by petitioner. When petitioner sold gold or other metals to GCGS on March 3, May 27, June 27, and August 2, 1988, he requested that the manager of GCGS issue several checks, rather than one check, for the full amount of the sale for the transactions. By receiving checks from GCGS in amounts of less than $ 10,000, petitioner purposely and intentionally avoided the requirement that P&D file currency transaction reports for the checks cashed for Gaston Civil in excess of $ 10,000. All checks issued by GCGS, MGS, and others and made payable to Gaston Civil were deposited by petitioner into P&D's bank account, rather than into an account in the name of The Golden Nugget. When petitioner deposited the checks from GCGS made payable to Gaston Civil, he made the deposits on different dates even though the checks related to the same transaction. By depositing the checks from GCGS on different dates, petitioner intentionally and purposely avoided the requirement of filing currency transaction reports because the deposits were in amounts of less than *586 $ 10,000. Although they were issued to and made payable to Gaston Civil, all of the 18 checks made payable to him and cashed by P&D during 1988 represent income to petitioner through his business known as The Golden Nugget. Petitioner invented the fictitious character known as Gaston Civil; there is no such person. Petitioner used the name of Gaston Civil to conceal his receipt during 1988 of large sums of taxable income resulting from transactions with GCGS, MGS, and others. Petitioner used the name of Gaston Civil to evade the payment of Federal income tax on the large sums of taxable income he received in 1988 from transactions with GCGS, MGS, and others. As a direct result of petitioner's actions (namely, creating the fictitious person named Gaston Civil, using him as a conduit for taxable income received by petitioner from GCGS, MGS, and others, insisting that GCGS issue checks in amounts of less than $ 10,000, and depositing the checks into The Golden Nugget's bank account on different dates to avoid currency transaction reports), petitioner fraudulently and with the intent to evade Federal income tax omitted taxable income of at least $ 106,076.81 from his Federal income *587 tax return for 1988. Because petitioner fraudulently and intentionally understated his taxable income for 1988 by at least $ 106,076.81, he fraudulently underpaid his income tax liability for that year by at least $ 31,673. Petitioner requested, both in person and by telephone, that the manager of GCGS provide false and misleading information to the Service if the Service made inquiries about the checks written to Gaston Civil. Respondent further represents in her motion to dismiss, and petitioner does not dispute, the following facts. On August 27, 1993, respondent sent petitioner a letter in which respondent again requested petitioner's assistance in preparing his case for trial. Respondent also informed petitioner in that letter of her reliance on the facts stated in respondent's request for admissions which was mailed to him on June 14, 1993. Petitioner did not reply in any manner to that letter. By letter dated September 22, 1993, respondent sent petitioner a proposed stipulation of facts. In that letter, respondent also informed petitioner that if he continued to ignore her efforts to prepare his case for trial, respondent intended to file a motion to dismiss for lack *588 of prosecution. Petitioner did not reply in any manner to that letter. On September 28, 1993, respondent served on petitioner a copy of her trial memorandum, along with an accompanying letter. Petitioner did not reply in any manner to that letter. Nor did he submit a trial memorandum to the Court. Although petitioner had originally been represented by counsel in this case, that counsel filed a motion to withdraw on December 18, 1992, which was granted by the Court on January 29, 1993. Since that time, no entry of appearance or other filing has been made by petitioner or on his behalf. In that motion to withdraw, then counsel for petitioner represented to the Court that petitioner had been indicted under 31 U.S.C. sec. 5324 for failure to file currency transaction reports and had failed to appear for trial in that criminal matter. He further represented to the Court that a bench warrant had been issued for petitioner's arrest and that the United States had moved the United States District Court for the Northern District of California for a forfeiture of petitioner's bail. Petitioner's then counsel further represented that petitioner, who *589 was a Haitian immigrant who had established U.S. citizenship, was believed to have fled the borders of the United States with no intent to return to the United States. He further indicated to the Court that his attempts to ascertain petitioner's current address and telephone number had met with no success and that he could not proceed to trial of the instant case without petitioner's presence and cooperation. In her motion to dismiss for lack of prosecution, respondent represented that she believes petitioner is in Haiti and that it is unlikely that he would risk arrest for a civil trial by returning to the United States. Petitioner filed no response to respondent's motion to dismiss. Nor did he or anyone on his behalf appear at the hearing on that motion. We find that petitioner has totally failed to prosecute his case. Accordingly, respondent's motion to dismiss for lack of prosecution will be granted as to those issues on which petitioner has the burden of proof, namely, the income tax deficiency and the addition to tax under section 6661. With respect to the addition to tax for fraud under section 6653(b)(1), respondent has the burden of proof which she must satisfy by *590 clear and convincing evidence. We conclude that respondent has sustained that burden. Facts supporting a decision for respondent with respect to the addition to tax for fraud are set forth in respondent's request for admissions. Those undenied admissions (as well as all the other undenied admissions) are deemed established for purposes of this case. Rule 90(c); Marshall v. Commissioner, 85 T.C. at 272; Morrison v. Commissioner, 81 T.C. at 647. Therefore, respondent's motion for summary judgment with respect to the addition to tax for fraud will be granted. An appropriate order and decision will be entered for respondent. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code in effect for the year at issue.↩