JONATHAN P. WOLFF AND MARGARET A. WOLFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wolff v. Commissioner
Docket No. 13142-89
United States Tax Court
T.C. Memo 1994-196; 1994 Tax Ct. Memo LEXIS 198; 67 T.C.M. (CCH) 2875; T.C.M. (RIA) 94196; May 2, 1994, Filed *198 An order will be issued denying petitioners' motion for summary judgment. In Stoller v. Commissioner, T.C. Memo. 1990-659, affd. in part and revd. in part 994 F.2d 855 (D.C. Cir. 1993), we held that S, a partner in Holly, was not entitled to ordinary loss treatment with respect to the cancellation and replacement of certain forward contracts. The Court of Appeals held that S properly claimed an ordinary loss from the cancellation and replacement of the forward contracts. R determined in this proceeding that P, also a partner in Holly, is not entitled to ordinary loss treatment with respect to the cancellation and replacement of those same forward contracts. P filed a motion for summary judgment in this proceeding seeking to collaterally estop R based on the Court of Appeals' opinion in Stoller v. Commissioner, supra.
Held: R is not collaterally estopped from arguing that P is not entitled to ordinary loss treatment with respect to the cancellation and replacement of certain forward contracts. Held, further: P's motion for summary judgment is denied. For petitioners: Herbert Stoller and William L. *199 Bricker Jr. For respondent: Steven R. Guest and Mark J. Miller. PANUTHOS
PANUTHOS
MEMORANDUM OPINION PANUTHOS, Chief Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1979
$ 55,114
1980
$ 82,369
1981
$ 2,294 Respondent also determined that interest due on the deficiencies for all years in issue shall be computed pursuant to the increased interest rate imposed under section 6621(c). A timely petition was filed in this case. At the time of the filing of the petition herein, petitioners resided in Rye, New York. This matter is before the Court on petitioners' motion for summary judgment pursuant to Rule 121.[2] *201 The issue for decision in this case is whether respondent is barred *200 by the doctrine of collateral estoppel from contesting petitioners' characterization of a loss as an ordinary loss on their jointly filed Federal income tax returns. The claimed loss results from an investment in and the cancellation of forward contracts involving Government securities. Petitioners maintain that respondent is bound by the final decision in Stoller v. Commissioner, T.C. Memo. 1990-659, affd. in part and revd. in part 994 F.2d 855 (D.C. Cir. 1993) (hereinafter referred to as Stoller), in which the operative facts are virtually identical to those in the instant case, except as to the identity of the taxpayers.[3] In Stoller, the Court of Appeals for the District of Columbia Circuit, reversing the Tax Court, held that the taxpayers were entitled to an ordinary loss rather than a capital loss with respect to their investment. Respondent, in her objection to the motion for summary judgment, claims that she is not collaterally estopped from contesting petitioners' characterization of the loss. Background
During the years in issue, Jonathan P. Wolff (hereinafter referred to as petitioner) was a partner in Holly Trading Associates (Holly). Holly was engaged in trading contracts for the purchase and sale of Government securities, utilizing both futures contracts and forward contracts. [4] The trading plan utilized by Holly was set forth in detail in Stoller. The parties do not appear to dispute certain of our findings. In order to provide background, some of the facts of Stoller are set forth herein. [5] Holly engaged in arbitrage [6] of forward contracts involving United States Treasury Bonds spreads against Government National Mortgage Association Bonds spreads. As defined in Stoller *202 , a spread, sometimes referred to as a straddle, is composed of two "legs". One of the legs is the purchase of a commodity for delivery at a specified future date. The other leg is the simultaneous sale of the same commodity for delivery at a different specified future date. The purpose of the straddle is to minimize the risk to the holder of such straddle because as the value in one leg decreases, the value in the other leg increases. The straddles were set up to speculate on changes in interest rates. If interest rates fluctuated severely, one leg would reflect a large loss while the other leg would reflect a large gain. At this point, Holly, at petitioner's request, would direct that the loss leg be canceled and often be replaced with a new contract for a slightly different delivery date. As a result of these cancellation transactions, Holly incurred a cancellation fee from the dealer in the Government security, which was equal to the difference between the contract price of the security and its market value at the time of cancellation. Holly paid the cancellation fees and reported them as an ordinary loss at the partnership level, which then passed through to the individual *203 partners as an ordinary loss. For the years 1979 and 1980, petitioners deducted their portion of the cancellation fees as an ordinary loss.
This Court, in Stoller, held that the loss involving the cancellation and replacement of these forward contracts *204 was deductible, but as a capital loss. [7] The Court of Appeals for the District of Columbia Circuit reversed the Tax Court on this issue, holding that the loss incurred as a result of the cancellation and replacement of the forward contracts was properly claimed by the taxpayers as an ordinary loss. Discussion
Summary Judgment
Under Rule 121(b), a decision of summary judgment may be "rendered if the pleadings, answers to interrogatories, depositions, admissions and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law". Naftel v. Commissioner, 85 T.C. 527, 529 (1985); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). [8] The moving party *205 (petitioners) bears the burden of proving that there is no genuine issue of material fact. Marshall v. Commissioner, 85 T.C. 267, 271 (1985). Factual inferences are read in the light most favorable to the party opposing the summary judgment. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Espinoza v. Commissioner, supra.
The parties disagree as to whether they are to be bound by the Stoller case. Petitioners' counsel, in his affidavit, asserts that petitioners, as well as respondent, *206 expected the decision in Stoller to be controlling as to the common issues in the present case, including the issue as to the character of the cancellation losses. Respondent maintains that petitioners declined to enter into an agreement to be bound by the outcome in Stoller while the appeal was pending. In response, petitioners claim that they declined to enter into the agreement because it was too broad; however, they claim that respondent understood and tacitly agreed to be bound by the results of Stoller, and that understanding was not altered by petitioners' refusal to accept the form of the agreement to be bound. In support of this claim, petitioners attached to their pleadings a copy of a motion for continuance filed by respondent in another docketed case involving petitioners' 1982 tax year. In said motion, respondent indicated that adjustments related to petitioners' interest in Holly for all the tax years that were in issue (1979 through 1982) could not be resolved until the appeal in Stoller had been completed. The documents attached to the pleadings and relied upon by petitioners reflect negotiations by the parties with a view toward executing an agreement *207 to be bound. However, there is no document which expressly states that the parties agreed to be bound, nor is there any information that satisfactorily establishes that either party consented to be bound. The language contained in the motion for continuance, filed in a different docket, simply reflects respondent's desire to await the outcome of Stoller. There being no agreement to be bound, we next consider whether respondent is collaterally estopped from proceeding in this case. Collateral Estoppel
The doctrine of collateral estoppel provides that after a court has decided an issue of fact or law necessary to its judgment, such decision is conclusive in a subsequent suit based on a different cause of action involving a party or its privy to the prior litigation. United States v. Mendoza, 464 U.S. 154, 158 (1984). We have stated in Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), that the following conditions must be met: (1) The issue in the second suit must be identical in all respects with the one decided in the first suit. Commissioner v. Sunnen, [333 U.S. 591 (1948)] *208 supra at 599-600. (2) There must be a final judgment rendered by a court of competent jurisdiction. Commissioner v. Gammill, [62 T.C. 607 (1974)]supra at 613. (3) Collateral estoppel may be invoked against parties and their privies to the prior judgment. Commissioner v. Gammill, supra at 614, 615. (4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision. Commissioner v. Sunnen, supra at 598, 601. (5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. Commissioner v. Sunnen, supra at 599-600. [Fn. ref. omitted.]
The parties do not appear to dispute that all the conditions exist for application of collateral estoppel except condition (3) above. There is no question that petitioners are not the same parties as the taxpayers in the prior litigation. We must decide if petitioners are persons in privity with the taxpayers in the prior litigation. If privity does not exist, we must further decide *209 whether petitioners can rely on the doctrine of nonmutual offensive collateral estoppel. We first look to determine whether petitioners are in privity with the taxpayers in Stoller. It is established that collateral estoppel can be invoked against the Government when there is mutuality of both parties or their privy. United States v. Stauffer Chemical, Co, 464 U.S. 165 (1984); Peck v. Commissioner, supra.Petitioner refers to the fact that he was a principal witness in the Stoller case, and claims that, as a partner in Holly along with Herbert Stoller, he contributed to the costs of litigating the Stoller case. Petitioners then cite to the Supreme Court case Montana v. United States, 440 U.S. 147, 155 (1979), in which it was concluded that the Government had a "laboring oar" in the conduct of earlier litigation, so as to activate principles of collateral estoppel. Among the factors considered by the Supreme Court were that the Government (1) required the earlier litigation to commence, (2) reviewed and approved the complaint, (3) paid the attorneys fees and costs, (4) *210 appeared and submitted a brief as amicus, and (5) directed the filing of an appeal. Montana v. United States, supra at 154-155. There is nothing to indicate that petitioner's "involvement" in the Stoller case rose to the level of that described in Montana v. United States. It is not surprising that petitioner took an interest in the Stoller case and testified on behalf of the taxpayer, Herbert Stoller, with whom he had a business relationship. However, there is nothing to indicate that petitioner was in the position to exert control over the progress of the Stoller case in the way the Government controlled the earlier litigation in Montana. Petitioners, in the alternative, attempt to establish privity by claiming that the outcome in Stoller should bind the parties since all of the partners in Holly would have been bound by an adverse result in the Stoller case, referring to Fine v. Commissioner, T.C. Memo. 1989-640. The Court in Fine v. Commissioner concluded that a limited partner in a subsequent proceeding was bound by the results rendered in a prior proceeding involving a managing *211 partner. According to the Court, nonparties may be bound if a party is so closely aligned with their interests as to be a "virtual representative". Fine v. Commissioner, id. (citing United States v. ITT, Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980)). "A finding of virtual representation may be based on an express or implied legal relationship that makes a party to the prior action accountable to a non-party." Id. (quoting United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir. 1984)). Petitioners' reliance on Fine v. Commissioner is misplaced. The Court based its holding upon the finding that the partner involved in the earlier litigation was a "virtual representative" of the taxpayer. Particularly important was the fact that the partner in the earlier litigation was the managing partner of a partnership which had as one of its partners a partnership in which the taxpayer was a limited partner. That managing partner also ran the day-to-day operations of a joint venture which included (1) the partnership for which he was the managing partner and (2) a corporation. In the instant case, *212 petitioner claims to be a managing partner of Holly, along with Herbert Stoller and another individual. There is nothing to indicate that Herbert Stoller occupied such a position in relation to petitioners as to be accountable to petitioners. Cf. Feldman v. Commissioner, T.C. Memo. 1990-532 (a partner, solely by reason of a partnership relationship, is not per se in privity with the other partners).[9]
*213 Since we have concluded that petitioners are not a party in privity with respect to the prior litigation, petitioners must rely on the doctrine of nonmutual offensive collateral estoppel. In recent years, the Supreme Court has broadened the scope of collateral estoppel beyond its common-law limits by abandoning the requirement of mutuality of both parties and by conditionally approving the "offensive" use of collateral estoppel by a nonparty to a prior lawsuit.[10]United States v. Mendoza, 464 U.S. at 158-159 (citing Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971), and Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)). However, the doctrine of collateral estoppel will not apply if there are special circumstances that warrant an exception to the normal rules of issue preclusion. Montana v. United States, supra at 155; cf. United States v. Mendoza, supra at 162-163. *214 The Supreme Court addressed the application of nonmutual offensive collateral estoppel against the Government in United States v. Mendoza, supra. In Mendoza, a Filipino national filed a petition for naturalization under the Nationality Act of 1940, asserting that he had been denied due process of law as a result of the Government's administration of the act. The naturalization examiner recommended that the petition be denied; however, a United States District Court granted the petition without reaching the merits of the Filipino national's constitutional claim. The United States District Court held that the Government was collaterally estopped from relitigating the constitutional issue because of an earlier unappealed United States District Court decision concerning the same issue in a case brought by other Filipino nationals. The Court of Appeals affirmed the lower court's judgment. The Supreme Court held that nonmutual offensive collateral estoppel did not apply against the Government to preclude relitigation of the issue presented. In Mendoza, the Supreme Court provided several reasons why the Government is not in a position identical *215 to that of a private litigant when a nonparty to a prior litigation seeks to invoke the doctrine of collateral estoppel. Among the factors considered was that the Government is a party to a far greater number of cases on a nationwide basis than any private entity, many of which will involve the same legal issues but with different parties. The Supreme Court went on to say: A rule allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari. Indeed, if nonmutual estoppel were routinely applied against the Government, this Court would have to revise its practice of waiting for a conflict to develop before granting certiorari. [United States v. Mendoza, supra at 160.]
The Supreme Court also expressed concern that the Government would have to appeal every adverse decision for fear *216 of foreclosing further review, rather than apply a standard of review based upon such considerations as resources of the Government and crowded dockets of the courts, before deciding to appeal a decision. Id. at 159-161. Other courts have indicated that the language in Mendoza is somewhat ambiguous concerning the extent to which the holding in Mendoza is to be applied when the United States Government is involved in litigation. See, e.g., Adkins v. Commissioner, 875 F.2d 137, 141 (7th Cir. 1989), affg. Gray v. Commissioner, 88 T.C. 1306 (1987); Sun Towers, Inc. v. Heckler, 725 F.2d 315, 323 n. 8 (5th Cir. 1984). In one instance, Mendoza states "we agree * * * that Parklane Hosiery's approval of nonmutual collateral estoppel is not to be extended to the United States". United States v. Mendoza, supra at 158. This appears to indicate a very broad application of Mendoza. However, the opinion later states, "nonmutual offensive collateral estoppel simply does not apply against the Government in such a way *217 as to preclude relitigation of issues such as those involved in this case", which appears to limit the application of Mendoza to instances involving certain issues. United States v. Mendoza, id. at 162 (emphasis added). This ambiguity has led several courts to interpret differently the extent to which the holding in Mendoza is to be applied. For example, the Court of Appeals for the Sixth Circuit, in a case involving an appeal from a Tax Court decision, indicated that nonmutual offensive collateral estoppel is never applicable against the Government, citing Mendoza. Kennedy v. Commissioner, 876 F.2d 1251, 1257 (6th Cir. 1989), affg. Gray v. Commissioner, 88 T.C. 1306 (1987); cf. Kroh v. Commissioner, 98 T.C. 383, 401-402 (1992) (while we considered whether nonmutual offensive collateral estoppel can be used against the Government, there was another basis for not applying the doctrine.)[11]
*218 The Court of Appeals for the Second Circuit recently permitted the application of nonmutual offensive collateral estoppel in a case involving State Government agents and a State Government agency. Benjamin v. Coughlin, 905 F.2d 571 (2d Cir. 1990). The Court of Appeals for the Second Circuit did not interpret Mendoza as prohibiting entirely the use of the doctrine of nonmutual offensive collateral estoppel when an official or agency of Government is involved, but rather, looked to the circumstances of the case to determine the doctrine's applicability. Of particular importance to the Court of Appeals in Benjamin was that the defendant State officials and agency had previously had the opportunity to appeal two prior adverse decisions concerning the same issue to the State's highest court. Benjamin v. Coughlin, supra at 576. As stated above, the Supreme Court, in Mendoza, expressed concern that issue preclusion should not be premature. Of particular relevance is the Supreme Court's reference to the importance of permitting more than one Federal Court of Appeals to explore difficult questions so that *219 a conflict develops before the Supreme Court grants certiorari, a consideration absent in Benjamin where collateral estoppel was invoked against a State agency and its officials based on prior litigation in State courts. Issues involving an interpretation of the Internal Revenue Code of course may be reviewed in more than one Federal Court of Appeals. The appeal in Stoller was considered by the District of Columbia Circuit, whereas appeal in the present case lies with the Second Circuit. Thus, use of nonmutual collateral estoppel against respondent here would prevent the underlying legal issue involved in the present case from being developed through litigation in multiple forums. See Devine v. Commissioner, 500 F.2d 1041, 1049-1050 (2d Cir. 1974), revg. and remanding 59 T.C. 152 (1972). [12] Accordingly, we hold that special circumstances exist which limit the application of collateral estoppel in this case. *220 Based upon the foregoing, we hold that respondent is not estopped by the doctrine of collateral estoppel from challenging petitioners' characterization of losses incurred by the cancellation and replacement of certain forward contracts. Accordingly, petitioners' motion for summary judgment will be denied. An order will be issued denying petitioners' motion for summary judgment. Footnotes
1. All section references are to the Internal Revenue Code. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise noted.↩
2. The motion was originally filed as a motion in limine. By order dated Mar. 21, 1994, the Court recharacterized the motion as one for summary judgment.↩
3. The taxpayers in Stoller v. Commissioner, T.C. Memo. 1990-659, affd. in part and revd. in part 994 F.2d 855↩ (D.C. Cir. 1993), were Herbert Stoller and his wife. Herbert Stoller is petitioners' counsel in the present case and is also representing several other similarly situated taxpayers with cases pending before this Court.
4. The Court of Appeals for the District of Columbia Circuit referred to the contracts at issue as "future contracts" rather than "forward contracts".↩
5. Petitioners request that we take judicial notice of the record in Stoller as well as the opinion in the Court of Appeals. Pursuant to rule 201, Federal Rules of Evidence↩, we take judicial notice that opinions were rendered at both the trial and appellate levels; however, we do not take judicial notice of the findings of fact, nor are they otherwise binding upon us here.
6. In Stoller↩, an arbitrage was defined as the simultaneous purchase in one market of a commodity and sale in another of a different commodity with the expectation of making a profit on price differences in the different markets.
7. In instances in which the loss leg of a straddle was canceled and no replacement contract was made, we held that the cancellation loss was properly claimed as an ordinary loss.↩
8. Summary judgment under Rule 121 is derived from Rule 56, Federal Rules of Civil Procedure. See Note to Rule 121, 60 T.C. 1127-1128. Therefore, the history and authority interpreting rule 56, Federal Rules of Civil Procedure, will be considered and examined to determine whether similar conclusions are appropriate for this Court. See Hoeme v. Commissioner, 63 T.C. 18, 21↩ (1974).
9. We also note that the purpose of the enactment of the TEFRA partnership procedures (generally applicable to partnership taxable years beginning after September 3, 1982) was to permit the audit and litigation of partnership items in a unified partnership proceeding thus binding all partners. Sec. 6221; Saso v. Commissioner, 93 T.C. 730, 734 (1989); Maxwell v. Commissioner, 87 T.C. 783, 788 (1986). The conference committee report in describing the pre-TEFRA law stated that "a judicial determination of an issue relating to a partnership item generally is conclusive only as to those partners who are parties to the proceeding." H. Conf. Rep. 97-760, at 599 (1982), 1982-2 C.B. 600↩, 662. The implication here is that in pre-TEFRA proceedings a partner would not be collaterally estopped by the litigation involving another partner in the same partnership.
10. Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326↩ n.4 (1979).
11. The facts in Kroh v. Commissioner, 98 T.C. 383 (1992), involve a taxpayer-wife who filed joint Federal income tax returns with her husband. The husband was later adjudicated bankrupt. The taxpayer-wife had no involvement in the bankruptcy proceedings. Respondent sent the taxpayers (husband and wife) notices of deficiency. The bankruptcy trustee settled all of the husband's tax liabilities with respondent; however, there was still an outstanding balance in the amount of deficiency owed. Respondent sought the remaining amount from the taxpayer-wife. Among the several arguments raised by the taxpayer-wife was that respondent was barred by the doctrine of collateral estoppel from proceeding against her for amounts greater than those awarded to respondent in the bankruptcy case involving the husband. This Court held that respondent was not barred by the doctrine of collateral estoppel because the taxpayer-wife failed to establish that the bankruptcy court actually decided any disputed issues with respect to her claim. We discussed the application of nonmutual offensive collateral estoppel. We allowed "offensive" use of nonmutual collateral estoppel against respondent in Graham v. Commissioner, 76 T.C. 853 (1981), though that case predated United States v. Mendoza, 464 U.S. 154↩ (1984).
12. While subsequent legislation resolved this issue for years after 1981, such event does not alter the rationale set forth herein. Stoller v. Commissioner↩, 994 F.2d at 858.