T.C. Memo. 1998-131


UNITED STATES TAX COURT


PAUL GARFINKLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 48967-86.                    Filed April 6, 1998.


Paul Garfinkle, pro se.

<u>Aubrey C. Brown</u>, for respondent.


MEMORANDUM OPINION


SWIFT, <u>Judge</u>:  This case is before the Court under Rule 121 on respondent's motion for partial summary judgment with respect to alleged unreported income, disallowed partnership losses, and a fraud addition to tax under section 6653(b).

For 1976, respondent determined a deficiency of $2,268,906 in petitioner's Federal income tax and a fraud addition to tax under section 6653(b) of $1,134,453.

Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in issue.

When the petition was filed, petitioner resided in Boca Raton, Florida.

On March 26, 1990, respondent served petitioner with requests for admission under Rule 90 with respect to significant material facts regarding the alleged unreported income, the disallowed partnership losses, and the fraud addition to tax that were determined by respondent. Petitioner did not answer or object to respondent's requests for admission. Because petitioner failed to respond to respondent's requests for admission, the factual matter set forth in respondent's requests for admission is deemed admitted. Rule 90(c).

Petitioner was an intelligent, well-educated individual, and an experienced tax attorney. In 1976, petitioner and an individual named George Osserman organized, promoted, controlled, and invested in a group of tax-oriented limited partnerships hereinafter referred to as the S-J partnerships or as the

partnerships.[1]  Petitioner and Osserman controlled the activities of the S-J partnerships.

For purposes of attracting investors in the S-J partnerships, petitioner and Osserman were responsible for preparation of an offering memorandum (OM) that was distributed to prospective investors.

In the OM, a number of misrepresentations and omissions of material facts were made regarding the S-J partnerships, and significant aspects of the S-J partnerships' activities were not consistent with representations made in the OM.

In the OM, it was noted that the S-J partnerships would lease an 11,000-acre tract of property in Campbell County, Wyoming (the property), which lease would include the right to mine for coal on 500 acres and a conditional right of access to the additional 10,500 acres if additional leases to mine coal could be obtained from the Federal Government, which owned the coal reserves on the 10,500 acres.  It was suggested in the OM that leases to mine coal on the remaining 10,500 acres could be readily obtained from the Federal Government.

It was also represented in the OM that the S-J partnerships intended to enter into agreements with experienced mining contractors to mine for coal on the property.

---

[1]    The S-J partnerships include S-J Mineral Associates, L.P., S-J Mineral Associates II, L.P., S-J Mineral Associates III, L.P., International Associates, L.P., and G & O Associates.

In fact and contrary to the above representations in the OM, the S-J partnerships obtained coal mining leases on only 400 acres of property. Significantly, with regard to the remaining 10,600 acres, mining leases were not available because in 1976, at the time the S-J partnerships were promoted and sold, a Federal moratorium was in place on the issuance of mining leases for coal reserves owned by the Federal Government.

Attached to the OM was a feasibility study in which estimates of probable coal reserves on the property were made and in which it was again suggested that leases to mine the coal reserves on the property could be readily obtained.

In the feasibility study, additional misrepresentations were made with regard to the market price of coal, the estimated amount of coal reserves on the property, and the sulphur content of coal reserves on the property. The author of the feasibility study was not a geologist, as represented in the OM, and he had no special qualifications to prepare the feasibility study.

In the OM, it was represented that advanced royalties that the S-J partnerships agreed to pay were negotiated at arm's length between unrelated parties and that such advanced royalties would give rise to large net operating losses for the S-J partnerships and its limited partners.

Stated advanced royalty obligations of the S-J partnerships under the lease agreement were in fact not negotiated at arm's

length between unrelated parties. The advanced royalty obligations of the S-J partnerships ran in favor of and the payments were to be made to Prodamat, N.V. and Bombardon Investments, N.V., corporations controlled by petitioner and Osserman.

The S-J partnerships never entered into mining agreements with mining contractors, owned any mining equipment, employed coal operators, or obtained rail siding to transport coal. During the time the S-J partnerships owned the leases, no coal was mined or sold on the property.

The lease transactions through which the S-J partnerships acquired mining leases in the property occurred on or after November 1, 1976. Material documents relating to the lease transactions were backdated to either October 25, 1976 or October 28, 1976, in order to attempt to establish the ownership interests of the S-J partnerships in the property prior to October 29, 1976, the effective date of a change in Federal law eliminating the deductibility of advanced royalty payments made in years in which no mineral is sold. In a deposition given as part of a plea agreement in a criminal proceeding relating to petitioner's promotion of the S-J partnerships, petitioner admitted that documents were backdated at his request.

Outside consultants hired by S-J partnerships to determine the feasibility of mining coal on the leased property identified

two major limitations of the property:  (1) The sulphur content in the coal was too high to comply with Environmental Protection Agency requirements, and (2) the amount of coal on the property was insufficient to support the purportedly planned mining operation.  This significant information was not disclosed in the OM.

In order to invest in one unit of the S-J partnerships, an individual investor would generally contribute $30,000 in cash to one of the partnerships and sign a nonrecourse promissory note for $126,000.  In general, each limited partner's contribution in the S-J partnerships constituted $1 of cash contributed for each approximate $4 of nonrecourse debt.

Investor funds received on sale of partnership interests were not used to mine coal.  Instead, most of the funds were used to pay commissions to promoters, including petitioner.

The S-J partnerships did not earn operating income and did not function as a trade or business in 1976.

The partnerships received approximately $20 million from investors for sale of limited partnership interests.  Most of the funds from sale of partnership interests were received by the S-J partnerships by the end of December 1976.

Petitioner received and exercised dominion and control for his personal benefit over at least $1,968,364 of the funds received from sale of S-J partnership interests.

Petitioner did not maintain accurate accounting books and records of the funds he received from sale of S-J partnership interests.

On petitioner's individual 1976 Federal income tax return that was filed untimely, petitioner did not report the above $1,968,364 that he received from sale of S-J partnership interests, and petitioner claimed ordinary losses of $9,499,701 relating to alleged investments in the S-J partnerships. During the audit, petitioner did not cooperate with respondent's examining agents.

In respondent's notice of deficiency for 1976, respondent determined that petitioner, in 1976, received income of $1,968,364 from sale of S-J partnership interests that was not reported on petitioner's 1976 Federal income tax return. Respondent also disallowed $9,269,756 of the claimed $9,499,701 in losses relating to the S-J partnerships primarily on the ground that the alleged advanced royalties were not deductible. Further, respondent determined that petitioner was liable for the fraud addition to tax under section 6653(b).[2]

---

[2]     In respondent's motion for partial summary judgment, respondent asserts that an additional $229,945 of the $9,499,701 claimed loss relating to the S-J partnerships should be disallowed. Respondent apparently seeks to increase the tax deficiency set forth in respondent's notice of deficiency to reflect this additional loss disallowance. Respondent has not raised this increased deficiency in the answer or by motion to amend the pleadings, and we decline to allow respondent to raise

(continued...)

In 1982, petitioner pleaded guilty to several crimes in connection with his promotion of investments in the S-J partnerships, including mail fraud, assisting in the preparation of an individual income tax return relating to the S-J partnerships that was fraudulent as to a material item, and willfully and knowingly conspiring to devise a scheme to defraud and to obtain money from respondent and from investors by means of false representations relating to the S-J partnerships.

During the pendency of additional criminal charges against petitioner, petitioner alleged certain Fifth Amendment rights in the instant proceeding. On August 14, 1996, however, petitioner entered into a plea bargain and a judgment was entered against petitioner with regard to those charges. On October 1, 1996, the Court herein issued a pretrial order calendaring the instant case for trial and requiring discovery to be completed, expert witness reports to be exchanged, a list of witnesses to be exchanged, a stipulation of facts and a stipulation of exhibits to be filed, and pretrial briefs to be filed. Petitioner failed to comply with any aspect of the above pretrial order.

Summary judgment or partial summary judgment may be granted if pleadings, answers to interrogatories, admissions, and other material show that no genuine issue exists as to any material

[2](...continued)
this increased deficiency by way of a motion for partial summary judgment. Rule 41.

fact and that a decision may be entered as a matter of law.  Rule 121(b).  A party opposing a motion for summary judgment may not rest upon mere allegations or denials in pleadings, but the opposing party must set forth specific facts showing that there exists a genuine factual issue for trial.  Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Facts deemed admitted under Rule 90(c) may support summary adjudication of issues involving omitted income, disallowed losses, and fraud.  Frazier v. Commissioner, 91 T.C. 1, 12-13 (1988); Marshall v. Commissioner, 85 T.C. 267, 271-273 (1985); Doncaster v. Commissioner, 77 T.C. 334, 337-338 (1981); Marineland Record Co. v. Commissioner, T.C. Memo. 1992-532.

Section 61 provides that gross income includes all income from whatever source derived.  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  Income "constitutes taxable income when its recipient has such control over it that, as a practical matter, * * * [the recipient] derives readily realizable economic value from it."  Rutkin v. United States, 343 U.S. 130, 137 (1952).

Claimed losses from partnership tax shelter transactions are deductible for Federal income tax purposes only if they are supported by economic substance and profit objective.  Karr v. Commissioner, 924 F.2d 1018, 1022-1023 (11th Cir. 1991), affg. 91 T.C. 733 (1988); Brannen v. Commissioner, 78 T.C. 471, 505-506

(1982), affd. 722 F.2d 695 (11th Cir. 1984).  Transactions are treated as lacking economic substance if the transactions do not have any practicable economic effect other than creation of claimed tax benefits.  Karr v. Commissioner, supra at 1023.

To establish fraud, respondent must prove by clear and convincing evidence that a taxpayer understated the taxpayer's correct tax liability and that part of the understatement was due to fraudulent intent.  Secs. 6653(b), 7454(a); Rule 142(b); Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Clayton v. Commissioner, 102 T.C. 632, 646 (1994); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988).

With regard to fraudulent intent, respondent is required to prove that a taxpayer intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Parks v. Commissioner, 94 T.C. 654, 661 (1990); Frazier v. Commissioner, supra at 12.

Generally, fraud is established by circumstantial evidence because direct evidence of fraud is not available.  Clayton v. Commissioner, supra at 647; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).  Courts have developed certain indicia of fraud, including the following:  (1) Understatements of income; (2) inadequate books and records; (3) failure to file tax returns; and (4) failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986),

affg. T.C. Memo. 1984-601; Clayton v. Commissioner, supra; Recklitis v. Commissioner, supra at 910. A taxpayer's intelligence, experience, and other circumstantial evidence relating to events in question may also be considered. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Grosshandler v. Commissioner, 75 T.C. 1, 19-20 (1980).

Petitioner's records relating to funds he received from sale of the S-J partnerships interests are inadequate. The evidence, however, establishes that petitioner in 1976 received at least $1,968,364 from sale of S-J partnerships interests. The evidence establishes that petitioner exercised dominion and control for his personal benefit over these funds. We conclude that the evidence supports respondent's determination in the notice of deficiency that petitioner received additional income in 1976 of $1,968,364 from sale of partnership interests.

With regard to the $9,269,756 disallowed claimed S-J partnerships losses, the evidence establishes that during 1976 the S-J partnerships did not enter into any mining agreements with mining contractors, own any mining equipment, employ coal operators, obtain rail siding to transport coal, or mine or sell coal. The evidence establishes that the amount of coal reserves on the property leased by the S-J partnerships was insufficient to support a mining operation and that the funds received from

investors were not used to pay for mining activity but were instead paid to promoters, including petitioner.

The evidence establishes that the purpose of the S-J partnerships was to create tax losses for the partners through improper deductions relating to alleged advanced royalty payments.

Based on the above established facts, we conclude that the transactions entered into by the S-J partnerships lacked business purpose and economic substance. Petitioner is not entitled to deduct the claimed losses of $9,269,756 relating to the S-J partnerships.

Further, under section 1.612-3(b)(3), Income Tax Regs., advanced royalties allegedly paid in a year when no mineral is sold are deductible as a general rule only if the leases were entered into prior to October 29, 1976. T.D. 7523, 1978-1 C.B. 192, 193. Although the lease agreements in question were backdated to either October 25, 1976 or October 28, 1976, the S-J partnerships did not actually own interests in the property prior to November 1, 1976. Respondent properly disallowed the claimed advanced royalty payments and the related claimed losses of the S-J partnerships.

With regard to the various elements of the fraud addition to tax, petitioner's failure to report taxable income of $1,968,364 and the disallowed losses of $9,269,756 from the S-J partnerships

result in a substantial underpayment in petitioner's 1976 Federal income tax, and respondent has established petitioner's underpayment for 1976 by clear and convincing evidence.

With respect to fraudulent intent, the evidence in the record and in support of respondent's motion for partial summary judgment establishes that for 1976 petitioner substantially underreported his correct Federal income tax liability, backdated material documents, did not timely file his 1976 income tax return, failed to maintain accurate books and records, and did not cooperate with respondent's examining agents. Petitioner was an experienced tax attorney and tax shelter promoter. Petitioner was aware that the S-J partnerships losses claimed on his 1976 income tax return were based on backdated documents. The evidence before us establishes by clear and convincing evidence that petitioner fraudulently intended to understate his correct Federal income tax liability for 1976.

Petitioner is liable for the fraud addition to tax under section 6653(b).

In opposition to respondent's motion for partial summary judgment, petitioner argues that respondent's requests for admission should not be deemed admitted. Petitioner argues that respondent should not be entitled to rely on deemed admissions. Petitioner alleges that the deemed admissions result from petitioner's failure to respond to the requests for admission

during a period of time when petitioner was entitled to Fifth Amendment protection and that after the judgment in the criminal proceeding was entered on August 14, 1996, respondent should have renewed the requests for admission.

To date, petitioner has not responded to respondent's requests for admission. Petitioner has had more than ample time to respond thereto after the judgment in petitioner's criminal proceeding was entered. This Court issued a pretrial order dated October 1, 1996, which notified petitioner that this case was proceeding to trial. When respondent filed the motion for partial summary judgment on December 30, 1996, more than 30 days had passed since judgment was rendered in petitioner's criminal proceeding and since our pretrial order was issued on October 1, 1996. Further, petitioner cites no authority for his assertion that respondent was required to renew the requests for admission after judgment was entered in petitioner's criminal proceeding. We conclude that respondent's requests for admission were properly deemed admitted under Rule 90(c).

The evidence establishes that for 1976 petitioner received unreported income of at least $1,968,364, that petitioner is not entitled to losses of $9,269,756 relating to the S-J partnerships, and that petitioner is liable for the fraud addition to tax as determined by respondent. We also conclude that no material factual matter remains in dispute that would

preclude us from granting respondent's motion for partial summary judgment.  As indicated, to the extent respondent's motion for partial summary judgment seeks an increase in respondent's deficiency determination against petitioner for 1976, respondent's motion will be denied.

To reflect the foregoing,

<u>An appropriate order will be issued granting in part and denying in part respondent's motion for partial summary judgment</u>.