EDMOND E. SALERA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Salera v. Comm'r
Docket No. 14682-03
United States Tax Court
2004 U.S. Tax Ct. LEXIS 51; November 23, 2004, Entered
*51 Harry A. Haines, Judge.
Harry A. Haines
ORDER AND DECISION
On October 14, 2004, respondent filed a Motion For Summary Judgment And For A Penalty Under I.R.C. § 6673 (a) (1) moving for summary adjudication in respondent's favor on all issues in the case and requesting that the Court impose a penalty on petitioner under section 6673.[1] The Court issued an order directing petitioner to respond to respondent's motion on or before October 28, 2004. Petitioner did not file a response.
Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine issue of material fact and a decision may be rendered as matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). As discussed below, we conclude that there is no dispute as to a material fact and that respondent is *52 entitled to summary judgment as a matter of law.
On March 18, 2003, the Court rendered a bench opinion in which we granted partial summary judgment for respondent in that petitioner was precluded from contesting the invalidity of the Bella Vista Chiropractic Clinic Trust, Acme Equipment Trust, and Deschutes Road Trust, his taxability on the disputed self-employment income, and his liability for the negligence penalty for 1997 and 1998. Salera v. Commissioner, an Oral Opinion of this court dated March 18, 2003. We also held that petitioner could not deduct any amount for car and truck expenses for 1997 and 1998 because petitioner did not provide evidence relating to those expenses. Id. The Court declined to grant respondent's motion as to a penalty under section 6673, but warned petitioner that if he continued to maintain frivolous positions, the penalty may be imposed in the future. Id.
On May 28, 2003, respondent sent petitioner a notice of deficiency determining deficiencies and penalties under section 6662(a) as follows:
Year
Deficiency
Sec. 6662(a) Penalty
1999
$90,778.00
$18,155.60
2000
78,662.00
15,732.40
2001
69,078.00
13,815.60
Respondent based his determinations on the following: (1) Petitioner *53 understated his gross receipts for 1999, 2000, and 2001, on the basis of profit and loss statements and a bank deposits analysis of Bella Vista Chiropractic; (2) petitioner was not entitled to a deduction for contributions to his retirement plan for 1999; (3) petitioner was not entitled to Schedule C deductions for car and truck expenses for 1999 and 2000; (4) petitioner was not entitled to a Schedule C deduction for legal and professional services expenses for 2000; (5) petitioner was not entitled to a Schedule C deduction for meals and entertainment expenses for 2000; (6) petitioner was not entitled to Schedule C-EZ expenses for 2001; (7) petitioner was liable for increased self-employment tax for 1999, 2000, and 2001; and (8) petitioner was liable for accuracy-related penalties under section 6662(a) for 1999, 2000, and 2001. On August 25, 2003, petitioner filed a petition with the Court disputing respondent's determinations.
On October 7, 2003, respondent filed a Motion To Dismiss For Failure To State A Claim And To Impose A Penalty Under I.R.C. § 6673, moving that the case be dismissed for failure to state a claim upon which relief may be granted and on the basis of the fact that *54 petitioner instituted the proceedings primarily for the purpose of delay and that the position of the petitioner is frivolous or groundless. The motion was called for hearing at the Court's motions session held in Washington, D.C., on November 19, 2003. During the hearing, respondent conceded that certain allegations contained in petitioner's amended petition, filed November 4, 2003, state a claim for relief. As a result, the Court denied respondent's motion, but, upon the Court's own motion, the Court struck certain paragraphs of the petition and amended petition and advised petitioner that the Court may impose a section 6673 penalty if he persists in making the type of frivolous and groundless arguments that were stricken by the order. The following allegations by petitioner remain:
1.) The Notice of Deficiency was issued to petitioner claiming petitioner had unreported income. Petitioner denies having any unreported income. (2) Attached to the Notice of deficiency, IRS Form 4549-CG, income tax examination changes, line 11 states, "Total Corrected Tax Liability." Petitioner denies having a tax liability. * * * (8) Petitioners declaration, signed under penalty of perjury, is attached *55 and mace [sic] part of this matter. (9) Petitioner will disagree with all of the alleged Tax Liability.
* * * *
Does Salera have control and or vested interest in the Business Trust
I.R.S. has not showed by evidence or testimony (1-4 Above) that Salera had any powers of administration over the Business Trust. The Trust instrument dictates, that the settler gives up all powers and control future and present. Where the taxpayer has a broad power of the control over the income and corpus of his trust for his children, did not make income taxable to him, although he might receive income as parent of minor beneficiaries on their behalf. Loes v. CIP 1946363 Foster v. Cir 1947 8 EC 197 Smith v. Cir 1945 4 EC 573. The I.R.S. has failed to substantiate the relationship of Salera to the Business Trust.
Should the unreported income claimed by I.R.S. be reported on Salera 1040 or the Trust 1040
Based on Code Section 7491(a), the Salera [sic] have introduced credible evidence so that the I.R.S. has shown that the Salera [sic] are the grantors of the Business Trust, Where the taxpayer reserves no power or right as either grantor or trustee by which he could revert any of the principal or income of the *56 trust, the income therefore is not taxable to him Moor v CIR 1994 37.C 1250.
On August 31, 2004, respondent filed with the Court Respondent's Request for Admissions. On August 30, 2004, this request was served on petitioner. Petitioner did not respond to the request. Each statement in a request for admissions served on a party is deemed admitted unless a response is served on the requesting party within 30 days after service of the request. Rule 90(c). Thus, in addition to the admission of petitioner's Federal tax returns for 1999, 2000, and 2001, the notice of deficiency, profit and loss statements for Bella Vista Chiropractic Trust for 1999 and 2001, the original trust instrument of Bella Vista Chiropractic Trust, and a quitclaim deed in which title to petitioner's residence was conveyed to Bella Vista Chiropractic Trust, the following facts are deemed admitted:
1. During 1999, 2000, and 2001, petitioner was employed at Bella Vista Chiropractic Clinic as a chiropractor.
2. Petitioner attended four years as a student at a chiropractic college.
3. Petitioner is licensed with the State of California as a chiropractor.
4. Petitioner was the original owner, as a sole proprietor, of Bella Vista *57 Chiropractic Clinic.
5. In the tax years before 1994, the petitioner, Edmond E. Salera, practiced as a self-employed chiropractor under the business name Bella Vista Chiropractic.
6. In the tax years before 1994, the petitioner, Edmond E. Salera, reported his earnings as a chiropractor as self-employment income on his federal income tax returns.
7. Beginning in 1994, and continuing through the end of 2001, the petitioner, Edmond E. Salera, continued working at Bella Vista Chiropractic Clinic as a chiropractor.
8. Beginning in 1994, and continuing through the end of 2001, the petitioner, Edmond E. Salera, performed most of the chiropractic work performed at Bella Vista Chiropractic Clinic.
9. In 1994, and continuing through the end of 2001, no chiropractor other than the petitioner, Edmond E. Salera, performed chiropractic work at Bella Vista Chiropractic Clinic on a regular and continuous basis.
10. Beginning in 1994, and continuing through the end of 2001, the petitioner, Edmond E. Salera, assigned his self-employment earnings as a chiropractor to Bella Vista Chiropractic Clinic Trust.
11. Petitioner was the manager of Bella Vista Chiropractic Clinic during 1999, 2000, and 2001.
12. Petitioner *58 personally performed substantially all of the chiropractic services performed at Bella Vista Chiropractic Clinic during 1999, 2000, and 2001.
13. During 1999, 2000, and 2001, petitioner made sure that Bella Vista Chiropractic Clinic opened and closed each work day; he kept track of employees. and he made all decisions regarding purchases, hiring and firing of employees, and signing of checks.
14. Petitioner was the creator and settlor of Bella Vista Chiropractic Trust.
15. During the years 1999, 2000, and 2001, bank account number XX-XX0721 was maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust.
16. During each of the years 1999, 2000, and 2001, all of the business income of Bella Vista Chiropractic was deposited into bank account number XX-XX0721 at Scott Valley Bank in the name of Bella Vista Chiropractic Trust.
17. During 1999, 2000, and 2001, all checks drawn on the bank account of Bella Vista Chiropractic Trust were signed by use of a facsimile stamp in the name of Robert Hogue, Trustee.
18. During 1999, 2000, and 2001, petitioner made all decisions regarding checks drawn against the bank account of Bella Vista Chiropractic Trust.
19. During 1999, 2000, and *59 2001, no checks were drawn against the bank account of Bella Vista Chiropractic Trust without petitioner's personal approval.
20. During 1999, 2000, and 2001, petitioner reviewed all bills of Bella Vista Chiropractic Clinic.
21. During 1999, 2000, and 2001, petitioner approved the payment of all bills of Bella Vista Chiropractic Clinic.
22. During 1999, 2000, and 2001, patients of petitioner wrote checks payable to petitioner for chiropractic services which petitioner provided.
23. During 1999, 2000, and 2001, petitioner deposited the checks, written by his clients and payable to petitioner, to the bank account of Bella Vista Chiropractic Trust.
24. On his 1999, 2000, and 2001 federal income tax returns, petitioner did not include in his income the checks written by his clients and payable to petitioner for services performed by petitioner.
25. Petitioner used the bank account at Scott Valley Bank in the name of Bella Vista Chiropractic Trust for personal expenses in 1999, 2000, and 2001.
26. During 1999, 2000, and 2001, petitioner deposited to the Bella Vista Chiropractic Trust bank account checks which he received from clients and insurance companies for chiropractic services which petitioner *60 provided and systematically moved money from the Bella Vista Chiropractic Clinic Trust bank account to himself.
27. The profit and loss statement for Bella Vista Chiropractic Trust for the period january 1, 1999, through December 31, 1999 was prepared in the ordinary course of business of the Bella Vista Chiropractic Clinic, at petitioner's request.
28. The petitioner, through his authorized representative, gave the profit and loss statement for Bella Vista Chiropractic Trust for the period January 1, 1999 through December 31, 1999, to respondent's revenue agent during the examination in this case.
29. The total gross receipts of Bella Vista Chiropractic Trust during 1999 were $274,893, as stated in the profit and loss statement for Bella Vista Chiropractic Trust for the period January 1, 1999, through December 31, 1999.
30. All gross receipts of Bella Vista Chiropractic Trust during 1999, $274,893, were generated by chiropractic services personally performed by petitioner at Bella Vista Chiropractic during 1999.
31. All of the gross receipts of Bella Vista Chiropractic Trust during 1999, $274,893, were taxable self-employment income to petitioner for the 1999 tax year.
32. Petitioner reported *61 total Schedule C gross receipts on his 1999 Form 1040 of $42,500.
33. Petitioner understated his Schedule C gross receipts for 1999 by $232,393.
34. The profit and loss statement for Bella Vista Chiropractic Trust for the period January 1, 2001, through December 31, 2001 was prepared in the ordinary course of business of the Bella Vista Chiropractic Clinic, at petitioner's request.
35. The petitioner, through his authorized representative, gave the profit and loss statement for Bella Vista Chiropractic Trust for the period January 1, 2001, through December 31, 2001, to respondent's revenue agent during the examination in the case.
36. The total gross receipts of Bella Vista Chiropractic Trust during 2001 were $222,639, as stated in the profit and loss statement for Bella Vista Chiropractic Trust for the period January 1, 2001, through December 31, 2001.
37. All of the gross receipts of Bella Vista Chiropractic Trust during 1999, $222,639, were generated by chiropractic services personally performed by petitioner at Bella Vista Chiropractic during 2001.
38. All of the gross receipts of Bella Vista Chiropractic Trust during 1999, $222,639, were taxable self-employment income to petitioner *62 for the 2001 tax year.
39. Petitioner reported total Schedule C gross receipts on his 2001 Form 1040 of $37,100.
40. Petitioner understated his Schedule C gross receipts for 2001 by $185,539.
41. During January, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $24,379,85.
42. During February, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $26,328.85.
43. During March, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $24,662.36.
44. During April, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $7,827.29.
45. During May, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $24,209.83.
46. During June, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, *63 were $22,156.00.
47. During July, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $19,588.41.
48. During August, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $24,008.44.
49. During September, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $16,172.22.
50. During October, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $12,322.22.
51. During November, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $14,106.04.
52. During December, 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were $15,766.31.
53. During all of the year 2000, the total deposits to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista *64 Chiropractic Trust, were $231,527.83.
54. All of the deposits during the year 2000 to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were for services rendered by petitioner as a chiropractor.
55. All of the deposits during the year 2000 to bank account number XX-XX0721, maintained at Scott Valley Bank in the name of Bella Vista Chiropractic Trust, were taxable self-employment income to petitioner.
56. Petitioner reported total Schedule C gross receipts on his 2000 Form 1040 of $27,000.
57. Petitioner understated his Schedule C gross receipts for 2000 by $204,838.
58. The copy of the original trust instrument of Bella Vista Chiropractic Clinic Trust, dated January 1, 1994, does not include copies of Schedule A through D, referred to in the trust instrument.
59. The holders of the certificates of beneficial interest in Bella Vista Chiropractic Clinic Trust, dated January 1, 1994, were allegedly named in Exhibit C to the trust instrument.
60. On the Schedule K-1 attached to the 1998 fiduciary income tax return of Bella Vista Chiropractic Clinic Trust, dated January 1, 1994, the petitioner Edmond E. Salera was named as the beneficiary *65 of Bella Vista Chiropractic Clinic Trust.
61. There were two Schedules K-1 attached to the 2000 fiduciary income tax return of Bella Vista Chiropractic Clinic Trust, dated January 1, 1994; Michael Salera of Ft. Lauderdale, Florida, was the named beneficiary on the Schedule K-1 and Susan Salera of Miami Beach, Florida, was the named beneficiary on the other Schedule K-1.
62. There was one Schedule K-1 filed with respondent relating to the 2001 fiduciary income tax return of Bella Vista Chiropractic Clinic Trust, dated January 1, 1994; Bella Vista Chiropractic Inc. was the named beneficiary in that Schedule K-1.
63. In 1994, the petitioner, Edmond E. Salera, conveyed title to his residence located at 2176 Dartmouth Drive, Redding, CA, to Deschutes Road Trust for no consideration
64. The petitioner, Edmond E. Salera, continued to reside in his residence at 2176 Dartmouth Drive, Redding, CA, during each of the years 1994 through 2001.
65. In 2000, the petitioner and Michael Welch, as trustees of Deschutes Road Trust, conveyed title to petitioner's residence located at 2176 Dartmouth Drive, Redding, CA, to Bella Vista Chiropractic Trust with Robert Hogue as Legal Trustee, for no consideration.
66. *66 The petitioner, Edmond E. Salera, caused depreciation deductions to be claimed on the 2000 and 2001 fiduciary income tax returns of Bella Vista Chiropractic Trust, for his residence located at 2176 Dartmouth Drive, Redding, CA.
67. The petitioner, Edmond E. Salera, caused deductions to be claimed on the 2000 and 2001 fiduciary income tax returns of Bella Vista Chiropractic Trust, for his own personal living expenses related to his residence located at 2176 Dartmouth Drive, Redding, CA.
68. In 1994, the petitioner, Edmond E. Salera, conveyed title to the property at which he conducts his chiropractic practice, 23 Deschutes Road, Bella Vista, CA, to Deschutes Road Trust for no consideration.
69. The petitioner, Edmond E. Salera, did not report the transfer of the property at 23 Deschutes Road, Bella Vista, CA, to Deschutes Road Trust on any federal income tax return.
70. The petitioner, Edmond E. Salera, had claimed depreciations on the property at 23 Deschutes Road, CA, before transferring title to Deschutes Road Trust.
71. The petitioner, Edmond E. Salera, caused depreciation deductions to be claimed on the 1999 and 2000 fiduciary income tax returns of Bella Vista Chiropractic Trust, for *67 the property at 23 Deschutes Road, Bella Vista, CA, which petitioner had previously depreciated as property of his chiropractic sole-proprietorship.
72. Petitioner did not maintain required records of his gross receipts from self-employment for the years 1999, 2000, and 2001.
73. Petitioner did not maintain any documentation or substantiation for any Schedule C expenses for the tax years 1999, 2000, and 2001.
74. Petitioner did not maintain records to support the deduction which he claimed on his 1999 tax return for "Keogh and self-employed SEP and SIMPLE plans" in the amount of $5,000.00.
75. Petitioner is not entitled to the deduction which he claimed on his 1999 tax return for "Keogh and self-employed SEP and SIMPLE plans" in the amount of $5,000.00.
76. Petitioner did not maintain records to support the deductions which he claimed on his 1999 Schedule C for car and truck expenses in the amount of $6,418.00.
77. Petitioner is not entitled to the deduction which he claimed on his 1999 Schedule C for car and truck expenses in the amount of $6,418.00.
78. Petitioner did not maintain records to support the deduction which he claimed on his 2000 Schedule C for car and truck expenses in the *68 amount of $6,284.00.
79. Petitioner is not entitled to the deduction which he claimed on his 2000 Schedule C for car and truck expenses in the amount of $6,284.00
80. Petitioner did not maintain records to support the deduction which he claimed on his 2000 Schedule C for legal and professional expenses in the amount of $175.00.
81. Petitioner is not entitled to the deduction which he claimed on his 2000 Schedule C for legal and professional expenses in the amount of $175.00.
82. Petitioner did not maintain records to support the deduction which he claimed on his 2000 Schedule C for meals and entertainment expenses in the amount of $2,850.00 (fifty percent of $5,700.00).
83. Petitioner is not entitled to the deduction which he claimed on his 2000 Schedule C for meals and entertainment expenses in the amount of $2,850.00.
84. Petitioner did not maintain records to support the deduction which he claimed on his 2001 Schedule C-EZ for expenses in the amount of $175.00.
85. Petitioner is not entitled to the deduction which he claimed on his 2000 Schedule C-EZ for expenses in the amount of $175.00.
86. Petitioner is not entitled to any Schedule C or Schedule C-EZ expenses for the tax years 1999, *69 2000, and 2001.
87. During all of 1999, 2000, and 2001, Bella Vista Chiropractic Trust was a sham.
88. During all of 1999, 2000, and 2001, Bella Vista Chiropractic Trust was controlled by the petitioner.
89. All of the income of Bella Vista Chiropractic Trust was taxable self-employment income to petitioner.
90. During all of 1999, 2000, and 2001 Bella Vista Chiropractic Trust was a grantor trust of petitioner.
91. For each of the 1999, 2000, and 2001 tax years , the petitioner impermissibly attempted to assign his own income from self-employment to Bella Vista Chiropractic Trust.
92. Petitioner is liable for a deficiency in income tax for the tax year 1999 in the amount of $69,078.00.
93. Petitioner is liable for a deficiency in income tax for the tax year 2000 in the amount of $78,662.00.
94. Petitioner is liable for a deficiency in income tax for the tax year 2001 in the amount of $90,778.00.
95. Petitioner's deficiencies for each of the years 1999, 2000, and 2001 were due to negligence.
96. Petitioner's deficiencies for each of the years 1999, 2000, and 2001 exceeded $5,000 and also exceeded ten percent of the tax required to be shown on a petitioner's tax return for each of those years.
97. *70 Petitioner did not have reasonable cause for understating his 1999 income tax.
98. Petitioner did not have reasonable cause for understating his 2000 income tax.
99. Petitioner did not have reasonable cause for understating his 2001 income tax.
100. Petitioner, on his 1999, 2000, and 2001 Forms 1040, failed to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.
101. Petitioner, on his 1999, 2000, and 2001 Forms 1040, carelessly, recklessly, and intentionally disregarded Internal Revenue rules and regulations.
102. Petitioner is liable for a penalty for the tax year 1999, under the provisions of I.R.C. section 6662(a), in the amount of $13,815.60.
103. Petitioner is liable for a penalty for the tax year 2000, under the provisions of I.R.C. section 6662(a), in the amount of $15,732.40.
104. Petitioner is liable for a penalty for the tax year 2001, under the provisions of I.R.C. section 6662(a), in the amount of $18,155.60.
Matters deemed admitted under Rule 90(c) are conclusively established and may be considered in deciding whether to grant a motion for summary judgment. Rule 90(f); Marshall v. Commissioner, 85 T.C. 267, 272-273 (1985); Morrison v. Commissioner, 81 T.C. 644, 651-652(1983); *71 Doncaster v. Commissioner, 77 T.C. 334, 336 (1981).
Unreported Income
A fundamental principle of tax law is that income is taxed to the person who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739, 69 S. Ct. 1210, 93 L. Ed. 1659, 1949-2 C.B. 5 (1949); Lucas v. Earl, 281 U.S. 111, 114, 50 S. Ct. 241, 74 L. Ed. 731 (1930); Johnston v. Commissioner, T.C. Memo. 2000-315. An assignment of income to a trust is ineffective to shift the tax burden from the taxpayer to a trust when the taxpayer controls the earning of the income. Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164.
The Commissioner is not required to apply the tax laws in accordance with the form a taxpayer employs where that form is a sham or inconsistent with economic reality. Diedrich v. Commissioner, 457 U.S. 191, 195, 102 S. Ct. 2414, 72 L. Ed. 2d 777 (1982); Higgins v. Smith, 308 U.S. 473, 477, 60 S. Ct. 355, 84 L. Ed. 406 (1940). Where an entity is created that has no real economic effect and which affects no cognizable economic relationships, the substance of a transaction involving this entity will control over form. Zmuda v. Commissioner, 731 F.2d 1417, 1420 (9th Cir. 1984), affg. 79 T.C. 714, 719 (1982); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980).
We conclude that petitioner, not the trust, earned the unreported *72 income through his chiropractic practice. We base our conclusion upon due consideration of the admissions on the record, which include that all of the gross receipts reported on the profit and loss statements of Bella Vista Chiropractic Trust for 1999 and 2001 and all of the bank deposits of Bella Vista Chiropractic Trust for 2000 were self-employment income to petitioner and that petitioner understated his Schedule C gross receipts by the amounts determined in the notice of deficiency. There is no question of material fact that petitioner did not report all of his income: petitioner underreported gross receipts from Bella Vista Chiropractic Trust, the resulting income is self-employment income to petitioner, and petitioner is liable for the tax on the resulting self-employment income.
Deductions
Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that he has complied with the specific requirements for any deduction he claims. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84, 112 S. Ct. 1039, 117 L. Ed. 2d 226 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S. Ct. 788, 78 L. Ed. 1348, 1934-1 C.B. 194 (1934).
Under section 162, a taxpayer may deduct all ordinary and necessary expenses paid or incurred *73 during the taxable year in carrying on any trade or business, if the taxpayer maintains sufficient records to substantiate the expenses. Secs. 162(a) and 6001; sec. 1.6001-1(a), Income Tax Regs. The taxpayer bears the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). If a taxpayer has established that deductible expenses were incurred but has not established the amount of such expenses, we may estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, there must be evidence in the record that provides a rational basis for our estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985)
Petitioner admitted that he did not maintain records to support the claimed deductions for 1999, 2000, and 2001, and that petitioner is not entitled to these deductions. Therefore, there is no genuine issue of material fact; petitioner is not entitled to any of the deductions disallowed in the notice of deficiency.
Accuracy-Related Penalty
Section 6662(a) imposes a penalty in the amount of 20 percent on the portion of the underpayment to which the section applies. As relevant to this case, *74 the penalty applies to any portion of the underpayment that is attributable to negligence or disregard of rules or regulations. Sec. 6662 (b) (1). Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b) (1), Income Tax Regs. Moreover, negligence has been described as the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3 (b) (2), Income Tax Regs.
Section 7491(c) requires respondent to carry the burden of production because he seeks to impose an accuracy-related penalty pursuant to section 6662(a). Respondent has met his burden of production by providing petitioner's admissions that: (1) petitioner impermissibly attempted to assign his own income from self-employment to Bella Vista Chiropractic Trust; (2) petitioner's deficiencies for 1999, 2000, and 2001 were due to negligence; (3) petitioner failed to make a reasonable attempt to comply with the Internal Revenue *75 Code; (4) petitioner carelessly, recklessly, and intentionally disregarded internal revenue rules and regulations; and (5) petitioner is liable for the penalties determined under section 6662(a) for 1999, 2000, and 2001.
Even though respondent has met his burden of production, the accuracy-related penalty will not be imposed if petitioner can establish that he acted with reasonable cause and in good faith. See sec. 6664(c) (1). Petitioner admitted that petitioner did not have reasonable cause for understating his income in 1999, 2000, and 2001. Petitioner did not respond to the request for admissions to dispute these statements. Accordingly, we hold that there is no genuine issue of material fact that petitioner is liable for the accuracy-related penalties determined under section 6662(a).
Section 6673 Penalty
Respondent requests that the Court impose a penalty on petitioner under section 6673 (a) (1). Section 6673 (a) (1) authorizes the Court to require a taxpayer to pay to the U.S. a penalty in an amount not to exceed $25,000 whenever it appears to the Court that the taxpayer's position in the proceeding is frivolous or groundless. Sec. 6673 (a) (1) (B).
In the bench opinion rendered *76 for 1997 and 1998, the Court warned petitioner that a penalty under section 6673 may be imposed if petitioner continued to assert frivolous positions. Salera v. Commissioner, an Oral Opinion of this Court dated March 18, 2003. Petitioner was warned again at the hearing for the instant case at the Court's motions session. Since the motions session, petitioner has not asserted any frivolous positions; in fact, petitioner has been nonresponsive to respondent's motion for summary judgment. Under the circumstances, we decline to grant respondent's motion as to a penalty under 6673. However, we will continue to warn petitioner that the penalty under section 6673 may be imposed in the future if petitioner maintains frivolous positions.
Upon due consideration, it is
ORDERED that so much of respondent's motion for summary judgment that moves for summary judgment is granted. It is further
ORDERED that so much of respondent's motion that moves for a penalty under I.R.C. section 6673 is denied. It is further
ORDERED AND DECIDED that there are deficiencies in income tax and penalties under I.R.C. section 6662 due from petitioner as follows:
Year
Deficiency
Sec. 6662(a) Penalty
1999
$90,778.00
$18,155.60
2000
78,662.00
15,732.40
2001
69,078.00
13,815.60
/s/ *77 Harry A. Haines
Harry A. Haines
Judge
ENTERED: NOV 23 2004
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all rule references are to the Tax Court Rules of Practice and Procedure.↩